COMMONWEALTH *vs.* HERBERT G. EARL, JR.

Berkshire. March 6, 1972. — June 1, 1972.

Present, TAURO, C.J., SPIEGEL, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Practice, Criminal,* New trial, Disclosure of evidence.

There was no error in denial of a motion for a new trial of a criminal case on the° defendant's allegation that the prosecution had improperly withheld police reports which were contradictory of certain prosecution testimony where it appeared that the defendant's counsel was aware of the existence of the police reports but never made a demand for their production, and that the reports were given to defence counsel before the judge's instructions to the jury and defence counsel did not move for a mistrial or request that the case be reopened so that additional evidence might be presented. [14–17]

---

*Corp.* 346 Mass. 513, 521, fn. 5. See also Restatement 2d: Contracts (Tent. draft no. 3, April 18, 1967) § 138.

INDICTMENTS found and returned in the Superior Court on April 4, 1967.

A motion for a new trial was heard by *Macaulay,* J.

*Reuben Goodman* for the defendant.

*William W. Simons,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   This is an appeal under G. L. c. 278, §§ 33A–33G, from the denial of a motion for a new trial.[1] The defendant was convicted by a jury on an indictment charging him with assault with intent to murder his wife, Janice Earl, while armed with a dangerous weapon, and on two indictments charging assault and battery with a dangerous weapon on his wife and one Vincent Sanginetti.   On the indictment for assault with intent to murder he was sentenced to seven to twelve years at the Massachusetts Correctional Institution at Walpole.   Concurrent sentences were imposed on the other indictments.   The defendant's appeal from the denial of his motion is based on his contention that the prosecuting attorney had improperly withheld police reports which were contradictory to certain prosecution testimony by the defendant's wife and Vincent Sanginetti and which reports corroborated the defendant's testimony.

The pertinent evidence at the trial was as follows.[2] The defendant had been separated from his wife and children since June of 1966 and thereafter failed to provide for their support.   The defendant testified that he arrived at his wife's apartment on the evening of November 3, 1966, and in his wife's absence gained entrance to the apartment and awaited her return from her place of employment.   He did not awaken the baby

---

[1] This court ordered that the defendant's petition for a writ of error be dismissed "without prejudice to the . . . [defendant's] right to move in the trial court for a new trial." *Earl* v. *Commonwealth,* 356 Mass. 181, 184.

[2] A transcript of the evidence was introduced at the hearing on the motion for a new trial.

sitter or his children. He observed from a window the arrival of his wife and Sanginetti in a car about 2:30 A.M. and that they embraced for a short period of time and then entered the house. The apartment was in darkness, and he hid in the bedroom closet. His wife and Sanginetti came into the bedroom, and he heard the sound of a zipper and "uniform nylon cloth rubbing." He came out of the closet and turned on the light. He saw Sanginetti sitting on a bed with his pants down, removing his shoes, and his wife standing over by a dresser "somewhat stooped over" with her back toward him (the defendant) with her "pants and bra on" and with her hands behind her in a position indicating that she was ready to "unhook." Sanginetti then said, "Hoppy, let me explain. It's not like it seems." A stabbing then occurred, resulting in serious injuries.

Mrs. Earl testified that she and Sanginetti went into the kitchen and that she then "checked" the children and the baby sitter, following which she went into the bedroom to change from her uniform. As she was undressing, she heard a noise and called to Sanginetti who came into the bedroom. The defendant then came out of the closet, turned on the light, and she and Sanginetti were stabbed. She stated that Sanginetti was fully clothed and that she had on her "pants, bra and two half slips." Sanginetti testified that while he was in the kitchen he heard a noise from the bedroom, and that when he got there, he saw the defendant. He said to the defendant, "Hi ya Hoppy, how ya going?", and the defendant immediately stabbed him.

Sergeant Rozon testified that he went with the police ambulance to a house where Mrs. Earl had fled after the stabbing. He then went to the Earl apartment and assisted in the search for the defendant. The prosecuting attorney at the conclusion of the officer's direct examination asked him, "Is that the extent that you played in this investigation?" The officer answered, "Yes."

The police reports that the defendant alleges were withheld contained the following material. A report by Sergeant Rozon stated, "Sanginetti was dressed only in his undershorts. He told Officer Dean that he had been in bed with Mrs. Earl and that her husband had stabbed him."

Police reports by officers who did not testify contained material similar to that in Sergeant Rozon's report. The report of Officers Russo and McCarthy stated in part: "At that time Sanginetti was asked what had happened, and he replied that he had been in bed with Mrs. Earl, and that her husband Hoppy stabbed him. He also stated that Mrs. Earl and he had gone to bed at two a.m. and they did not have time to have intercourse. Finally, Sanginetti stated that he did not blame Earl for stabbing him."

The report of Officer Dean stated in part: "I asked him why he did this and he said, I was fooling around with his wife in bed. A priest was called and after he talked with the priest, and the Father was leaving, he blessed him out loud. Sanginetti said 'I don't deserve it Father, I'm no good.'"

There was no error in the denial of the defendant's motion for a new trial. The evidence warrants a finding that the defendant's counsel was aware of the existence of the police reports. During the trial, he questioned a police officer concerning them[3] but never made a demand for their production. Moreover, it is uncontradicted that the police reports in question were given to the defendant's counsel before the judge's in-

---

[3] At the trial, defence counsel on direct examination of one Lieutenant Robert L. Jordan asked: Q. "Now did one officer somewhere along the line write up a report as it concerns the crime or was there more than one?" A. "I believe all officers made reports." Q. "Now will you tell me, did you have the opportunity to review their reports?" A. "Yes, I did." In addressing the court following an objection by the prosecuting attorney, defence counsel stated: "I have asked him whether . . . he has examined these reports . . . [I] . . . submit . . . that he is competent to offer the evidence that he has perused or he has determined by reading these reports that were made at his direction." Clearly on this record the defendant's counsel could have demanded production of the police records before or during the trial.

structions to the jury. After receiving the police reports, the defendant's counsel did not move for a mistrial or request the court to reopen the case so that additional evidence might be presented. The judge was not informed about the reports. It may well have been part of the defendant's trial strategy to avoid the use of the disputed evidence. In the circumstances we cannot say that evidence was unconstitutionally withheld from the defendant contrary to the requirements of *Brady* v. *Maryland,* 373 U. S. 83.

There was no deliberate refusal to disclose after a request, nor was there a deliberate suppression of evidence indicating a clear intention on the part of the prosecution to withhold from the defendant knowledge of its existence.[4]

The circumstances demonstrate that at most there was on the part of the prosecution a "[f]ailure to appreciate the use to which the defense could place evidence." *United States* v. *Keogh,* 391 F. 2d 138, 148 (2d Cir.). "To invalidate convictions in such cases because a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties." *Id.* at 148.

The Supreme Court of the United States explicitly declined in *Giles* v. *Maryland,* 386 U. S. 66, 74, to determine "whether the prosecution's constitutional duty to disclose extends to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial." *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 317. *United States* v. *Keogh, supra,* at 146. "In seeking a workable solution courts must consider not only the maximizing of

---

[4] There is no doubt that the defendant would be entitled to relief if the prosecution "deliberately presented a false picture of the facts, either by knowingly using perjured testimony, failing to correct testimony when it became apparent that it was false, or actively suppressing evidence known to be exculpatory." *Levin* v. *Katzenbach,* 363 F. 2d 287, 290 (D. C. Cir.). See *Commonwealth* v. *Cassesso,* 360 Mass. 570, 577–578.

protection to convicted defendants but the avoidance of impossible burdens on prosecutors and the need to preserve the finality of convictions rendered after trials as nearly faultless as human frailties will permit." *Id.* at 146.

In *United States* v. *DeLeo,* 422 F. 2d 487 (1st Cir.), cert. den. sub nom. *DeLeo* v. *United States,* 397 U. S. 1037, it was held that an alleged inconsistency in identification by a witness which was not disclosed to the defence was not material to the outcome of the case.

In *Rhinehart* v. *Rhay,* 440 F. 2d 718, 726 (9th Cir.), cert. den. 404 U. S. 825, it was stated that since there was not a "deliberate use by the prosecutor of false testimony nor a frustrated effort by the defense to obtain information, the record must show a substantially higher probability that disclosure of the evidence to the defense would have altered the result." See *United States* v. *Keogh, supra,* at 148.

Here, the statements in the police reports attributed to Sanginetti are not only inconsistent with Sanginetti's testimony but also with that of the defendant. In fact, the defendant's testimony is consistent, in large measure, with the testimony of Sanginetti and not with the statements attributed in the police reports to Sanginetti. The defendant's own testimony indicates that neither his wife nor Sanginetti were in bed at the time of the stabbing. The exact meaning of the statements in the police reports which were based largely on hearsay are incapable of determination and, in any event, they are at variance with the defendant's own testimony. It cannot be said that in these circumstances the evidence contained in the reports was of such a material nature that the result, with regard to both verdicts and sentences, would have differed.

On the contrary, the evidence as to the defendant's guilt was overwhelming. Had the defendant offered to contradict the testimony of Mrs. Earl and Sanginetti with evidence from the police officers, he would have, in effect, contradicted his own testimony as to what had

occurred in the bedroom prior to the stabbing. In any event, in the circumstances of this case we hold that the defendant was not prejudiced by the conduct of the district attorney in connection with the police reports.

*Order denying motion for new trial affirmed.*