COMMONWEALTH *vs.* LEWIS BELMONTE & others.[1]

Suffolk.    June 14, 1976. — July 30, 1976.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Fair trial, Disclosure of evidence. *Assault. Evidence,* In rebuttal, On cross-examination, Judicial discretion, Of prior conviction. *Error,* Whether error harmful. *Joint Enterprise.*

Defendants indicted for assault and battery by means of a dangerous weapon who had procured the issuance of criminal complaints against the victim for assault by means of a dangerous weapon were not denied a fair trial by the Commonwealth's failure to prosecute the victim speedily. [508-509]

At a criminal trial, there was no error in admitting rebuttal testimony of a witness whose name and address had not been supplied to the defendants despite a pre-trial discovery agreement where the testimony was elementary rebuttal evidence and where the defendants had not been prejudiced by the belated disclosure of the existence of the witness. [509-510]

There was no merit in the defendants' contention that the victim's testimony regarding statements made by the defendants during their assault on him should have been struck because the victim was a police officer and the Commonwealth had failed to include those statements in its response to pre-trial discovery orders. [510]

A judge at a criminal trial did not abuse his discretion in excluding certain questions concerning a witness's alcoholism. [510-511]

A judge at a criminal trial did not err in admitting in evidence the record of a defendant's prior conviction where limiting instructions were given both when the record was admitted and during the charge to the jury. [511]

At the trial of indictments for assault and battery by means of a dangerous weapon, where there was overwhelming evidence that the defendants had taken part in the assault, they were not prejudiced by the admission in evidence of a jackknife dropped by one of the defendants during his arrest at the scene of the assault. [511]

---

[1] Edward B. Halloran and James A. Matera.

At a criminal trial there was sufficient evidence to warrant findings that each of three defendants was guilty of assault and battery either on the basis of his own acts or on a theory of joint enterprise. [511-512]

INDICTMENTS found and returned in the Superior Court on April 10, 1974.

The cases were tried before *McLaughlin*, C.J.

*Robert Emmet Dinsmore* for the defendants.

*Thomas E. Dwyer, Jr.*, Special Assistant District Attorney, for the Commonwealth.

HALE, C.J. The three defendants appeal from convictions for assault and battery by means of a dangerous weapon (a shod foot) after a trial held pursuant to G. L. c. 278, §§ 33A-33G. They have argued eleven assignments of error concerning various aspects of the conduct of the trial. We find no prejudicial error and affirm. We discuss the defendants' assignments of error, after summarizing the evidence.

The victim, an off duty MBTA police officer, left a restaurant near the intersection of Atlantic Avenue and Commercial Street in Boston at approximately 10:30 P.M. on March 28, 1974. He was accompanied by two women. As the three approached the victim's car, they discovered a car which was double parked, blocking the exit from the parking space. (The car was registered to the defendant Matera.) As the victim entered his car, his companions called out to three men who were standing near a light pole approximately thirty yards away to move the obstructing car. The defendant Belmonte walked toward the two cars. The victim reached under the front seat of his car and withdrew a twelve inch stick which he carried while on duty. He put the stick in a pocket of his raincoat, alighted from the automobile, and asked Belmonte whether he owned the offending car. Belmonte replied, "What about it?" and refused the victim's request to move the car. The victim displayed his badge and said, "I'm a police officer, just move the car." Belmonte stated, "That doesn't impress me. Besides it is not my car." The victim then moved toward the two other men (Matera and Hal-

loran) to request them to move the car, but his way was blocked by Belmonte. The victim took the stick from his pocket with one hand and pushed Belmonte out of the way with the other.

The victim then approached Matera and Halloran and asked them whether either owned the car blocking his. He again showed his police badge and asked them to move the car. As he was doing this Belmonte approached and yelled, "He hit me back there. He hit me back there." All three defendants then grabbed the victim and began hitting his head, shoulders and stomach. The three also kicked him in the face, forehead, shoulders, ribs and legs. The victim reached for his .38 caliber revolver and fired one shot, wounding Belmonte in the arm. Halloran jumped on top of the victim and struggled for the gun. While all of this was going on a taxicab arrived on the scene. Its driver, after talking with one of the victim's female companions, observed the three defendants beating the victim, who was lying on his side and trying to protect his head and face. When the driver attempted to aid the victim, a fourth man approached him, positioned a gun near his left ear, and told him to leave. The cab driver got back into his taxi but while doing so heard one of the defendants say, "This is it . . . Let's get out of here." One of the others said, "No, I want to kill the son of a bitch."

As two Boston police officers arrived at the scene of the fight, they observed one of the defendants lift the victim and drop him to the ground and the other two kick him.

1. After the defendants were indicted, they procured the issuance of criminal complaints against the victim, charging him with assault by means of a dangerous weapon  (a stick and a gun). A Municipal Court continued the trial of those complaints several times, and finally past the trial date of the present charges. The defendants filed a motion to dismiss the present indictments, based on several grounds. The motion was denied. They now argue only that the failure to prosecute the victim speedily denied them a fair trial. The argument is,

at best, an attempt to pour old wine into new bottles; at worst it is frivolous. The defendants had no standing to complain of the denial of the victim's right to a speedy trial, nor did they even have a right to insist on the prosecution of the victim. As the court stated in *Whitley* v. *Commonwealth*, 369 Mass. 961 (1975), upholding a District Court in its refusal to issue process against a Boston police officer, "The rights asserted by the petitioners are not private but are in fact lodged in the Commonwealth as it may proceed to enforce its laws ... '[I]n American jurisprudence ... a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.' "

2. The defendants objected to the admission of rebuttal testimony by the taxi driver. The Commonwealth had agreed to supply the names and addresses of witnesses who had been present at the scene of the offense in response to a pre-trial discovery motion by the defense. The taxi driver's name had not been included on that list. On a Friday after the court day had ended, the prosecutor communicated to the defendant's counsel that an additional witness had been present at the scene of the crime and that that witness would be made available to the defense for an interview if counsel should wish. The following Monday the prosecutor reiterated to the court what he had told counsel on the previous Friday. He stated that he did not intend to use the witness in the prosecution's case in chief and requested that the address of the witness be withheld, to allay fears for his security, but offered counsel a copy of the witness's statements. Counsel for the defendants met with the witness, but the witness refused to answer any of counsel's questions. The prosecutor did not call the witness in his case in chief, nor was the witness called by any of the defendants. They objected, when the prosecutor called the taxi driver in rebuttal, on the grounds that he was not a proper rebuttal witness and that the Commonwealth had failed to comply with the pre-trial discovery agreement. The judge then made several findings supporting his overruling of the de-

fendants' objection. He found that the taxi driver's testimony was elementary rebuttal evidence, as the defendants had denied the presence of the taxi driver. That decision was plainly a correct exercise of the judge's discretion to admit rebuttal testimony. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 593-594 (1956). He further found that there had been no prejudice to the defendants because of the Commonwealth's belated disclosure of the existence of the witness. He found that sufficient time remained during the trial for the defendants to investigate the witness and that, in view of the witness's refusal to answer questions in an interview, the defendants had an opportunity to "do everything . . . [they] could do with reference to this witness if . . . [they] had the witness' name the day after these indictments were returned." In light of those findings, which were clearly supported by the record, the admission of testimony of the taxi driver was clearly correct. See *Commonwealth* v. *Earl,* 362 Mass. 11, 14-17 (1972).

3. Similarly, the defendants have argued that their motions to strike the victim's testimony regarding statements made by the defendants during the melee should have been allowed, as the victim was a police officer and the Commonwealth had failed to include those statements in its response to the pre-trial discovery orders. The judge was correct in describing this objection as "a lot of nonsense."

4. The defendants argue that they were improperly limited in their cross-examination of the taxi driver. In particular, they point to the exclusion of questions concerning the witness's admission to a detoxification rehabilitation house, to the witness's work record with a Boston taxicab association, to the witness's prior experience as a witness in criminal trials, and to possible criminal charges pending against the witness. The defendants argue that their questions were necessary to determine whether the witness was biased and to test his credibility. They point particularly to *Commonwealth* v. *Caine,* 366 Mass. 366, 369-370 (1974), as holding that they were entitled to question the witness concerning his alleged alcoholism. We find no demonstra-

tion on this record of the prejudice that *Caine* requires before a reviewing court will rule that a judge has abused his discretion in limiting cross-examination.

Furthermore, our reading of the transcript of the lengthy and searching cross and recross-examination reveals that the judge limited the defendants' counsel only when the questions sought to elicit clearly irrelevant information or were unduly repetitious. We find no abuse of discretion in the exclusion of any of the questions. *Commonwealth* v. *Nicholson, ante,* 87, 89 (1976).

5. The brief answer to the defendants' contention that the judge improperly admitted in evidence the record of a prior conviction of the defendant Halloran can be found in *Commonwealth* v. *Boyd,* 367 Mass. 169, 174 (1975). Records of prior criminal convictions are admissible under G. L. c. 233, § 21, to impeach the credibility of a defendant who testifies in his own behalf. It is for the jury to determine the extent to which the prior crime bears on the defendant's credibility. A defendant is entitled only to limiting instructions, and here the defendants were afforded meticulous instructions, both when the record was admitted in evidence and during the charge to the jury.

6. Matera had been arrested at the scene, and, as he was being handcuffed, a jackknife fell to the ground at his feet. It was seized by one of the arresting officers. At trial the jackknife was admitted in evidence subject to the defendants' exception as evidence of consciousness of guilt. Assuming, without deciding, that the knife should not have been admitted as such evidence, we find that the defendants were not prejudiced. In view of the overwhelming evidence from the victim, by-standers, the taxi driver and police that the defendants, and Matera in particular, had taken part in the assault, we do not believe that knowledge that Matera possessed a jackknife prejudicially influenced the jury.

7. There was sufficient evidence introduced during the prosecution's case in chief to warrant sending all of the cases to the jury. The victim had testified that all three of the defendants had kicked his body and that Halloran

had kicked his head. There was sufficient evidence to send
the charges against all to the jury on the theory of joint
enterprise if the jury were to find that only one of the
defendants had kicked the victim. *Commonwealth* v. *Michel*, 367 Mass. 454, 456-457 (1975). The victim testified
that it was Belmonte who had initially refused to move
the car, that Belmonte had come over to the other defend-
ants when the victim sought to have them move the car,
and that Belmonte had told the other defendants that
the victim had attacked him. There was evidence that in
the course of the affray which followed all three defend-
ants had beaten the victim and that he had been kicked
repeatedly. The jury were entitled to conclude that the
assault and battery by means of a dangerous weapon had
been part of a concerted enterprise by all of the defend-
ants. See *Commonwealth* v. *Drew, ante,* 30, 31 (1976).

8. The defendants' remaining assignments of error de-
serve no comment.

*Judgments affirmed.*