UNITED STATES of America, Appellee,

v.

George W. CERMARK, Defendant, Appellant.

No. 79–1633.

United States Court of Appeals, First Circuit.

Argued March 13, 1980.

Decided June 3, 1980.

William Guy Ferris, Boston, Mass., with whom Nutter, McClennen & Fish, Boston, Mass., was on brief, for defendant, appellant.

Richard D. Glovsky, Asst. U. S. Atty., Chief, Civil Division, Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and WYZANSKI,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

George Cermark appeals the denial by the district court of his motion under 28 U.S.C. § 2255 to vacate his 12-year sentence for armed bank robbery.[1]

Cermark, in 1968, was sentenced in state court to a 10–20 year sentence for robbery. In mid-1973, having escaped after failing to return from furlough, Cermark was arrested and later charged with having robbed, with an accomplice, the New England Merchants National Bank of nearly $24,000. See 18 U.S.C. § 2113. Following his arrest he was returned to state prison, and, upon the advice of a friend, contacted and retained as his attorney a Mr. Henry Quarles, Jr. On April 16, 1974, Cermark appeared with Mr. Quarles before the district court and expressed his desire to change his previously entered plea of not guilty to one of guilty. Before accepting this change of plea, the district court thoroughly questioned Cermark, Attorney Quarles and the Assistant United States Attorney in order to assure itself that Cermark's guilty plea was being entered voluntarily. See Fed.R. Crim.P. 11. At the later disposition proceeding, on April 26, 1974, the government recommended a 12-year sentence to run concurrently with Cermark's existing state sentence; Cermark's attorney urged an 8-year sentence, "hoping that that recommendation would not be a strain on [the court's] judicial temperament." The court, indicating that it was "not disposed to impose a sentence which would add nothing to what [Cermark] is already doing," accepted the government's recommendation and imposed a 12-year concurrent sentence.

Cermark, who at his change-of-plea hearing had expressed the belief that he would not be paroled from his state sentence until "at least 1982," was returned to state authorities to serve out that sentence. Cermark's parole prediction proved pessimistic, however, and he was granted parole by state officials in August of 1975. After serving an additional 3-month state sentence for his conviction for a previous escape, Cermark was taken into federal custody. Over the next year, through various letters and motions, Cermark urged on a variety of grounds that his federal sentence should be modified or reduced. Finally, in February of 1977 Cermark filed the present section 2255 motion, see note 1 supra, in which for the first time he raised the arguments that he continues to press upon us today.

Cermark's section 2255 motion is premised mainly on the contention that his guilty plea was involuntarily entered. Such involuntariness resulted, Cermark suggests, because of his reliance in reaching a decision to plead guilty upon his attorney's erroneous advice concerning the effect of state parole on a concurrently imposed federal sentence. Cermark claims that his trial counsel informed him that the government would, in exchange for the guilty plea, recommend a concurrent sentence; counsel allegedly further instructed Cermark that if he were paroled from the underlying state sentence prior to the expiration of the federal sentence, federal parole would also be granted at that time, so long as Cermark had maintained a good institutional record. Cermark, as noted,

---

* Of the District of Massachusetts, sitting by designation.

1. Actually Cermark's present section 2255 motion is a consolidation of two prior, nearly identical motions, filed in February and April of 1977.

was in fact paroled from his state sentence in August 1975, only slightly more than one year after he began serving his concurrent federal sentence; he remains, however, in federal custody. Cermark argues that having thus been misled prior to entering a guilty plea as to the full consequences of such a plea his sentence must be vacated. Cermark further urges that such a result is required on the ground that the offer of erroneous legal advice by his trial attorney amounted to ineffective assistance of counsel.[2]

Cermark attempted to give form to these somewhat conclusory allegations at an evidentiary hearing on his section 2255 motion held before a magistrate on July 6, 1978. Cermark and his wife testified at this hearing in support of his allegations, with his trial attorney, Mr. Quarles, denying that he had given the supposed erroneous advice. In addition, copies of various letters, motions and other documentary evidence were introduced at this proceeding. Near the close of the hearing the government moved to dismiss, arguing that on all the evidence it was clear that Cermark's motion was factually baseless and that, at any rate, even assuming the truthfulness of Cermark's assertions, no legal relief was available. The magistrate took the matter under advisement, but before indicating his factual findings or legal conclusions, he relinquished his position as magistrate in order to accept an appointment as a state court judge. The case was therefore returned to the district court for decision. The court did not think it necessary to achieve a resolution of the factual issues. Instead, it "accepted the defendant's testimony as true," but nonetheless denied relief, finding no legal foundation therefor. This appeal followed.

■ We affirm. In doing so, we need not go so far as did the district court in accepting defendant's testimony as true. It is enough that based upon a thorough review of the entire record of these various proceedings, we are persuaded that Cermark's claim lacks all factual support. Section 2255 authorizes courts summarily to dispose of motions made pursuant to that section "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . ." Rule 4(b) of the Rules Governing Section 2255 Proceedings. A section 2255 motion may be decided without awaiting the results of an evidentiary hearing when such motion "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974). We regard the transcript of the undecided magistrate's hearing as part of an "expanded record," *see Miller v. United States*, 564 F.2d 103, 105 (1st Cir. 1977), *cert. denied*, 435 U.S. 931, 98 S.Ct. 1504, 55 L.Ed.2d 528 (1978); Rule 7 of the Rules Governing Section 2255 Proceedings, from which to review Cermark's claim and determine realistically whether there is any ground on which Cermark could prevail. Our review of that record, particularly Cermark's prior conduct and statements, convinces us that Cermark's factual allegations are "palpably false," *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970); *cf. Blackledge v. Allison*, 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977) ("patently frivolous or false"), and thus provide no basis for relief.

In the section of his 2255 motion designated "Supporting Facts," Cermark stated, "My attorney told me to plead guilty [and] I would get a Federal Sentence to run concurrent with state sentence and that if paroled from the state the Federal Authorities would go along with the Parole. Instead the Federal Authorities didn't grant me a Parole." At the magistrate's hearing Cermark basically repeated these allegations stating he had been advised by his attorney on two occasions that if he was

---

**2.** Interspliced with Cermark's ineffective assistance argument is a suggestion that the "misapprehension on the part of the defendant's counsel was . . . chargeable to the government." Suffice it to say that there is, as Cermark admits elsewhere, no evidence whatsoever indicating any type of misconduct on the part of the government.

paroled by the state authorities "The Feds would go along with it, providing I had a good institutional record." Cermark's wife also testified at this hearing, and although somewhat sketchy concerning many of the particulars, she did recall her presence at a courtroom conversation between Cermark and his attorney prior to the commencement of the change of plea hearing. During this conversation Cermark allegedly expressed his awareness of the fact that he would likely receive a 12-year sentence and was, according to Mrs. Cermark, informed by his attorney that if paroled by the state he would at the same time "get parolled [sic] by the Federal." Henry Quarles, Cermark's trial attorney, in an affidavit and testimony before the magistrate denied that he had given Cermark such erroneous parole advice. Rather, he stated that he explained to Cermark that even if paroled from the state sentence, some Federal time would have to be served. Quarles testified as follows,

"A. We had a discussion as to where he would be sent after he left [the state prison at] Walpole, whether or not he would be sent to a local Federal institution, and I remember specifically explaining to him that I could give him no assurance as to where he would be sent in the Federal institution, because it would depend on where they had room. They could send him to Kentucky, Texas, Missouri, or wherever they had room; but unless he messed up in prison, as a rule, they tried to send prisoners as close to local residence as possible, and possibly he would get Danbury. I remember specifically telling him that and him again asking me where he would be sent.

Q. Did you tell him when he would be parolled [sic] by the State he could also expect to be parolled [sic] by the Federal authorities?

A. No, I didn't.

Q. Did you ever tell him anything like that?

A. No."

Were this case one where the prisoner's allegations of attorney misfeasance stood rebutted simply by the attorney's statements to the contrary, we might require what is presently missing—a credibility determination. *Cf. Miller v. United States, supra,* 564 F.2d at 106 (court may not resolve critical factual questions against petitioner simply on basis of *ex parte* government affidavits). Here, however, Cermark's own remarks and conduct utterly belie his factual claims.

We first observe that when confronted at his disposition proceeding with the district court's intention to impose a sentence which would "add . . . to what he [was] already doing," Cermark, although given opportunity, voiced no opposition or indication that this proposed disposition ran counter to his sentencing expectations. Nor during the discussions of parole which took place at both the change-of-plea and sentencing hearings did Cermark introduce to the court his joint federal-state parole theory.[3]

Even more difficult to square with his current stance is Cermark's view of the consequences of his federal prison term expressed in his letter to the "United States Probation Office." In this letter, written only 18 days after the imposition of sentence, Cermark stated,

"Dear Mr. Kelley;

On April 26, 1974 I was sentenced to 12 years concurrent with the state sentence I am now doing. On April 16, you interviewed me.

I would appriciate [sic] it if you could answer the following questions for me??

---

3. We note also that Cermark and his attorney were questioned closely by the district court at the change-of-plea hearing as to whether Cermark had been promised "a particular sentence, probation, or any other inducement of any kind to plead guilty" or whether he had been informed "by anyone what sentence the Court would impose in the event of a plea of guilty." Both responded in the negative. The Assistant United States Attorney did indicate that "although no specific promise or representation" concerning sentencing had been made, he had informed Attorney Quarles of his willingness to "recommend to the United States Attorney a concurrent sentence," although not a "specific term of years."

(1) When am I elegable [sic] to be sent to a Federal Institution?

(2) Where will I be sent to?? I was under the impression from what my attorney said, that if I made Parole from the state, I would be Paroled to the Federal system and most likely go to Danburry [sic], Ct.

(3) How much time do I have to do before I am eligable [sic] to see the Federal Parol Board??? I was told 4 years 1/3rd of the 12 because it's my first Federal sentence.

(4) Do I receive credit for time served from time of indictment which was July, 24, 1973?? or from the time I received concurrent sentence which was April, 26, 1974??

I would prefer to do remaining sentence at Danburry [sic] Ct. because it is closer fro [sic] my family to visit me . . . ."

The clear import of the above letter is that Cermark was laboring under no misconception as to the terms of his future incarceration and understood well that he would be doing federal time after being paroled from the state system. Importantly, Cermark's summary of the opinion expressed to him by Attorney Quarles—that after parole from the state sentence Cermark would serve his remaining federal term in the federal system, "most likely" at Danbury—mirrors nearly identically Quarles' own recollection, offered through affidavit and testimony and discussed above, of the advice he had given Cermark. In the face of Cermark's own clearly expressed views as to his understanding of the relation between his federal and state sentences, his present contrary position lacks a credible foundation.[4]

Moreover, Cermark voiced no protestations when he was transferred following his state parole, to the custody of federal authorities in November of 1975. Surely one whose sentencing expectations were so plainly frustrated would likely register some indication of displeasure at learning

of a breach of the basic terms of the plea agreement. Cermark, about one month after being taken into federal custody, did write the district court which had imposed sentence asking the court to consider a reduction or modification of that sentence. Nowhere in that letter, however, did Cermark even hint that a parole understanding had been violated or that he had been misled by his attorney as to the consequences of a guilty plea. In fact, passages in Cermark's letter indicate again that he fully comprehended the relationship between his state and federal sentences. Cermark, noting his parole "from the State," informed the court that he was "presently . . . awaiting transportation to a Federal Prison to finish the remainder of [his] sentence" and revealed his awareness that as his state term had been completed he now had "to go to a Federal Prison for at least 2½ years . . . ." We find the inference compelling that Cermark harbored no belief that he would be paroled from the federal system concurrent with his receipt of state parole.

Finally, we note that in October of 1976, nearly one year after he had been taken into federal custody, Cermark filed a "Motion for Modification and/or Reduction of Sentence Pursuant to Rules 35, and 45(c) Federal Rules of Criminal Procedure and Memorandum of Law in Support Thereof." Nowhere in the accompanying materials did Cermark make any allegations even resembling those raised in the present section 2255 motion. Indeed the main grounds asserted in support of the Rules 35 and 45 request apparently were simply that "[d]efendant has been in custody for nine (9) years and would show [the] Court that his attitude has completely changed and that he is ready to assume a responsible role in society."

Cermark's current arguments, raised in a section 2255 motion filed nearly three years after the imposition of sentence and nearly one and one half years after his transfer to

---

4. Cermark, while acknowledging that this letter was in his handwriting, attempted to explain it basically by claiming that he didn't recall writing it. This same explanation was offered by Cermark in regard to a later letter written to the district court and discussed *infra*.

federal custody, appear to us to be "a mere afterthought," *United States v. Lowe*, 173 F.2d 346, 347 (2d Cir.), *cert. denied*, 337 U.S. 944, 69 S.Ct. 1499, 93 L.Ed. 1747 (1949), and without factual support. Cermark's present stance runs clearly counter not only to the testimony of his own attorney, *compare Castro v. United States*, 396 F.2d 345, 347 (9th Cir. 1968) (attorney in affidavit acknowledged erroneous advice), but to a consistent course of conduct in which Cermark himself raised numerous grounds, although importantly not those now offered, in an effort to escape the consequences of his guilty plea. In these circumstances, where the movant's own words and actions conclusively rebut his present contentions, we find, without need for further hearing, that Cermark's allegations are "palpably false." *Malcolm, supra,* 432 F.2d at 812. *Cf. Blackledge, supra,* 431 U.S. at 76, 97 S.Ct. at 1630.

We thus affirm, albeit on different grounds, the district court's denial of Cermark's motion for section 2255 relief.