**Geoffrey HONNEUS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 76–4506–C.**

United States District Court, D. Massachusetts.

March 16, 1981.

---

Bernard Grossberg, Boston, Mass., for plaintiff.

Paul E. Troy, Asst. U. S. Atty., Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This petition to vacate the conviction and sentence of Geoffrey Honneus under 28 U.S.C. § 2255 was filed on December 23, 1976. It is before the Court and oral argument has been heard on the government's motion for summary judgment.

On February 24, 1974 a jury convicted Geoffrey Honneus on five counts of marijuana related crimes, primarily the smuggling, importation, and distribution of the drug. Honneus was sentenced to a total of ten years and a $25,000 fine was imposed on

April 1, 1974. The Court of Appeals for the First Circuit affirmed the conviction in late December of that year. The Supreme Court denied certiorari on April 28, 1975. The fine was later reduced to $15,000 and a sentencing modification occurred on August 4, 1975. The petitioner received five years on count one of indictment no. 73–144, five years on counts two and four of the same indictment to be served on and after the sentence imposed on count one, and a special parole term of three years. In July of 1977 petitioner was paroled, and he is presently serving his special parole term.

■ Although evidentiary hearings are often helpful on petitions to vacate conviction and sentence, *United States v. Martorano*, 620 F.2d 912, 915 (1st Cir. 1980), it is well-established that such hearings are not required under 28 U.S.C. § 2255 when a petition "is inadequate on its face, or although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974); *United States v. Cermark*, 622 F.2d 1049 (1st Cir. 1980); *United States v. Hughes*, 635 F.2d 449 (5th Cir. 1981). The record subject to review is an "expanded one", including affidavits submitted by the parties and recollections and observations of the trial judge. *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978), *cert. denied* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978); *Miller v. United States*, 564 F.2d 103, 105 (1st Cir. 1977), *cert. denied* 435 U.S. 931, 98 S.Ct. 1504, 55 L.Ed.2d 28 (1978). I rule that no evidentiary hearing is needed or appropriate on this petition, due to the clarity of the expanded record and facial inadequacies of the petition.

The petitioner alleges that he was denied his Sixth Amendment right to effective assistance of counsel because of the existence of clear conflicts of interest between petitioner and his trial attorney, and that he was denied his Fifth Amendment right to due process of law by the failure of the Assistant U.S. Attorney and the Court to raise the conflicts issue with the petitioner. The allegations must be viewed in the context of the following facts, as revealed by the record.

Three days after the petitioner's arrest on April 4, 1973, the petitioner's father retained Thomas Troy to represent Geoffrey Honneus, for a fee of $50,000 plus an additional $10,000 for expenses. George Donovan, an attorney associated with Troy for a very short period of time, i. e. from the first week of March 1973 through June 1, 1973, had referred the Honneus family to Mr. Troy. Donovan was in fact related to Geoffrey Honneus by marriage. At the time of retention, Donovan and Troy apparently agreed that for the referral and help on the case Donovan would receive half of Troy's fee. Troy received $40,000 by June 1, 1973, of which Donovan was paid $16,500. Donovan received no more money after that date, he left Troy's office and discontinued work on the case. The trial took place eight months later in February 1974.

In late 1973 Donovan sued Troy in state court for the balance of the referral fee, yet Troy countered with the allegation that Donovan himself had given information to government agents about Honneus, both before and after the date of arrest, all to the possible detriment of his client and justifying no further payment. On December 29, 1973, Troy met with his client and explained his view that Donovan had leaked information and observed that Donovan had sued him for a referral fee in state court. The petitioner then signed a handwritten two page statement that concluded: "I further understand that because of Donovan's activities there is a strong possibility of a conflict of interest which may affect Attorney Troy's effectiveness to further represent me. Nevertheless, I being aware of all these facts, desire that Attorney Troy continue to represent me in my federal matters." This Court held hearings in January 1974 on Troy's concerns that Donovan was possibly a government plant in his office and that Donovan passed information to authorities. It found on April 1, 1974, that the charge that Donovan gave information to government agents was "totally lacking in a basis in fact." "No informa-

tion of any relevance or assistance in developing the criminal case against Honneus, et al was received by the Bureau of Narcotics and Dangerous Drugs, or by the United States Attorney's Office from George Donovan directly or from George Donovan indirectly through Police Officer Smith or anyone else."

The petitioner alleges that two different conflicts of interest hampered Attorney Troy and denied Honneus effective assistance of counsel. If Donovan himself, due to his divided loyalties, had an actual conflict of interest at the time he worked with Troy on the Honneus case, then Troy himself might be tainted by that conflict on the familiar principle that a conflict which disqualifies one member or associate of a firm also operates to disqualify the entire firm. The second conflict stems from the state court suit filed by Donovan against Troy for the balance of his referral fee and the conflict is between Troy's pecuniary interest in staying in the case and retaining his fee and his client's interest, which might call for withdrawal or plea-bargaining, something costing less than full representation and the full retainer.

■■■■ On a motion for summary judgment in a § 2255 proceeding, the government must establish that there is no genuine issue of material fact. The petitioner is entitled to the benefit of favorable inferences, and the affidavits before the Court take issue with each other over both the existence of conflicts and the knowing and intelligent nature of petitioner's alleged waiver. The § 2255 petition should also be tested, however, on a summary judgment motion, by asking whether, "assuming appellant's allegations to be true, he would be entitled to relief .... If not, the denial of his motion without a hearing" is "proper." *DeVincent v. United States*, 602 F.2d 1006, 1009 (1st Cir. 1979), later app. *DeVincent v. United States*, 632 F.2d 145 (1st Cir. 1980), cert. denied —— U.S. ——, 101 S.Ct. 618, 66 L.Ed.2d 501 (1980); *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974). Assuming

petitioner's allegations to be true, that a conflict of interest existed between Donovan and Honneus in April 1973, that a conflict of interest existed between Troy's pecuniary interest and that of his client, and that the December waiver was not a knowing and intelligent one, the petitioner is still not entitled to relief as a matter of law and the government's motion has merit.

In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), Justice Powell stated the following guideline: "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Petitioner fails to allege that Donovan's conflict of interest, if it tainted Attorney Troy due to firm association, adversely affected Troy's performance. *Cuyler* would seem to indicate that actual conflict and adverse effect should both be alleged and proved. The record, in any event, conclusively establishes that Donovan's conflict, if it did exist, did not actually affect trial "counsel's behavior in a way detrimental to his client." *Baty v. Balkcom*, 494 F.Supp. 960 (S.D.Ga. 1980). Donovan's association with Attorney Troy was only for less than three months and terminated well in advance of the actual trial. Troy did not know of Donovan's alleged activities until well after Donovan had left the firm. The record establishes, as set out in this Court's ruling on April 1, 1974, that Donovan passed nothing of significance to governmental agents in any of his alleged conversations. Nor is there a suggestion that Donovan did any work of major significance on the Honneus case during the period when Donovan worked for Troy.

The *Cuyler* decision, *supra*, emphasizes a two-tier conflict of interest analysis. Is there an actual conflict? Is there adverse effect? The latter appears to require less proof than prejudice. *Cuyler, supra*, 100 S.Ct. at 1719, 446 U.S. at 347; *Parker v. Parratt*, 504 F.Supp. 690 (D.C.Neb.1981).[1]

---

1. The Massachusetts courts have read *Cuyler, supra*, as leaving unaltered the requirement

that proof of prejudice is necessary when confronted with a possible conflict, whereas no

If there is ambiguity in applying the *Cuyler* guideline, and it does admittedly narrowly apply to representation of co-defendants, it is because the opinion suggests in places that one way to determine whether or not the first tier is met, whether or not an actual conflict of interest, as opposed to a potential conflict of interest, exists, is to examine whether or not the conflict "actually affected the adequacy of his (the defendant's) representation." [2] Such an analysis would collapse, therefore, the two-prong analysis into a single inquiry. Looking for "actual conflict" would be the same as finding "adverse effect." [3]

The facts of this case do, however, fit the two-tier analysis of *Cuyler, supra.* Even assuming that Donovan had an actual conflict of interest that reached Troy, the record conclusively establishes that there was no adverse effect on Honneus' representation. [4]

■ The same analysis applies to the second conflict of interest identified, between Troy's proprietary interest in staying in the case and keeping his retainer and his client's interest, which may have favored the withdrawal of Troy or pleading on lesser included offenses and saving the cost of trial. The petition, again, does not allege that this conflict had an "adverse effect." In addition, in the petitioner's memorandum in opposition to this motion the petitioner observes that the need to show effect is an open question. I rule that such is not the law following the *Cuyler* decision, *supra.* The lack of allegations on adverse effect is complemented by the expanded record, which conclusively shows that any conflict which Troy had with his pecuniary interest in the case was not detrimental to his representation of Honneus.

Unlike *United States v. Hurt*, 543 F.2d 162, 166 (D.C.Cir.1976), where appellate counsel was sued for libel in a followup case because he made certain representations on his client's behalf in the primary case, the state court action here against Attorney Troy only encouraged a more vigorous defense of his client's interest. It did not pull in an adverse direction. Recollections of the trial itself also substantiate beyond doubt the competent representation of Honneus by Troy, which was vigorous if not over vigorous on behalf of Honneus.

■ Alternatively, I rule that the record establishes that any conflict of interest which Troy confronted based on his own proprietary interest was merely a potential and not an actual conflict. In other words, not even the first tier of the *Cuyler* decision, *supra*, is met. When focusing on a lawyer's proprietary interest courts have emphasized the "presumption that the lawyer will subordinate his pecuniary interests

prejudice need be proven with an actual conflict. *Commonwealth v. Michel*, Mass., 409 N.E.2d 1293, at 1298 n.9 (1980).

The Supreme Judicial Court was silent on whether it read *Cuyler* as requiring proof of adverse effect in addition to proof of actual conflict, or whether the former inquiry was subsumed in determination of the latter. The *Michel* case seems to suggest that Massachusetts courts may not be distinguishing between adverse effect and prejudice.

**2.** The following paragraph is the one in point. The Court, after citing *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), notes:

Once the Court concluded that Glasser's lawyer had an actual conflict of interest, it refused "to indulge in nice calculations as to the amount of prejudice" attributable to the conflict. The conflict itself demonstrated a denial of "the right to have the effective assistance of counsel." 315 U.S. at 76, 62

S.Ct., at 467. Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief ... but until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance ... 100 S.Ct. 1708 at 1719, 446 U.S. at 347.

**3.** See Justice Marshall in *Cuyler, supra*, 100 S.Ct. at 1723, 446 U.S. at 357. Indeed, it may be that the two-level analysis of determining actual conflict and then adverse effect is merely another way of emphasizing the same distinction in different dress that arises when separating potential conflicts from actual conflicts.

**4.** The alternative way of analyzing this might be to say that Troy had only a potential and not an actual conflict of interest.

and honor his primary professional responsibility to his clients in the matter at hand." *United States v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). Troy's affidavit, paragraph 6, indicates that he did not hesitate to subordinate his pecuniary interest to his client's interest in the context of this case. The petitioner does not allege and the record offers no evidence whatsoever of a divergence between the pecuniary interests of Troy and his client so as to place Troy under inconsistent duties. I find that the record reveals that Troy represented the petitioner adequately and that his pecuniary interest tracked his client's interest.[5]

■ Petitioner's final claim, that he was denied due process of law by the failure of Assistant U.S. Attorney Brown, Agent Noon and the Court to bring the conflict of interest issue to his attention, is conclusively refuted by the record. Two days of hearings were held on the underlying facts of petitioner's petition in January 1974. Agent Noon and Mr. Brown were present, and the Court made specific findings, cited above, which reveal that petitioner's concerns received timely attention. This was not a *United States v. Foster*, 469 F.2d 1 (1st Cir. 1972), situation, and the risks from conflicts of interest on these facts were not nearly as great as with the representation of co-defendants. The due process claim "inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings [resulting in a conviction] in order to ascertain whether they offend those cannons of decency and fairness which express the notions of justice . . . toward those charged with the most heinous offenses." *Malinski v. New York*, 324 U.S. 401, 416–17, 65 S.Ct. 781, 788–89, 89 L.Ed. 1029 (1945); cited in *Pisa v. Streeter*, 491 F.Supp. 530 (D.Mass.1980). Given two days of hearings, the resultant lack of any suggestive evidence on conflicts of interest, and the relatively low-risk situation in representing one defendant, I rule that

the conduct of Assistant United States Attorney Brown, Agent Noon, and the Court comported with the constitutional due process demands of fundamental fairness.

Order accordingly.

---

5. Petitioner's argument that Troy aired Donovan's activities in hearings before this Court in January 1974 in an effort to hide his conflicts is without merit.