COMMONWEALTH *vs.* WILLIAM HURST.

Barnstable.    January 7, 1974.—February 13, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Practice, Criminal,* Disclosure of evidence, Supression of evidence by prosecutor, Argument by prosecutor.

At a trial for murder, mere failure by the prosecution "to appreciate" the "not insignificant use" to which the defendant could put evidence not disclosed by the prosecution, that the prosecution's principal witness, who was under indictment as an accessory to the murder, had stolen the murder weapon in a housebreak in which the defendant had participated, required, for proof of prejudice to the defendant, a substan-

tially higher probability than was shown that disclosure would have altered the result, where defence counsel knew two to four days prior to trial from "inside information" that the witness had stolen the murder weapon, although defence counsel was unaware of the defendant's participation in the break. [607-608]

Even if information, that a prosecution witness at a murder trial had joined with the defendant in a housebreak in which the murder weapon was stolen, known to a police detective but not to the District Attorney until after the witness had testified, were attributed to the Commonwealth before trial for the purposes of a claim by the defendant of failure by the prosecutor to disclose, such evidence would have appeared to the Commonwealth incriminating rather than exculpatory. [608]

Where it appeared that the defendant's counsel in a murder case knew two to four days prior to trial that the prosecution's principal witness had stolen the murder weapon in a housebreak, participation in which the defendant denied to his counsel in preparation for his trial, that defence counsel adopted a trial strategy of developing such theft on his cross-examination of the witness to cast suspicion on the witness as the murderer and did not press a motion for disclosure of exculpatory evidence or seek other remedy, but that he might not have opened up the subject of the housebreak with the witness on cross-examination if he had known of a statement by the witness to a police officer that the defendant had participated in such break, any prejudice resulting from such cross-examination was a product of a deliberate tactical decision by defence counsel rather than unfair suppression of evidence by the prosecution. [608]

Where a prosecution witness at a murder trial testified on cross-examination by defence counsel that the defendant had participated with the witness in a burglary where the murder weapon was stolen and that he did not recall telling anybody about the defendant's participation before cross-examination, and defence counsel argued to the jury that the witness had recently contrived the defendant's participation, failure of the prosecution to disclose to counsel prior to argument that the witness had told a police officer of the defendant's participation involved no possibility of prejudice, because it would have negated the argument of recent contrivance and strengthened rather than weakened the witness's testimony. [608-609]

While it would have been improper for the prosecutor in argument to the jury at a murder trial to convey an impression of the date of an event contrary to information of which he was possessed without disclosing to the defence his contrary information, there was no prejudice of the defendant where the precise date of the event was immaterial and the event was collateral to the primary issues of the case. [609-610]


INDICTMENT found and returned in the Superior Court on January 20, 1972.

The case was tried before *McLaughlin,* C.J.

*Joseph J. Balliro* for the defendant.

*Philip A. Rollins,* District Attorney (*Elizabeth O'Neill LaStaiti,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

BRAUCHER, J. This is an appeal pursuant to G. L. c. 278, §§ 33A-33G, from a conviction of murder in the first degree and from an order denying the defendant's motion for a new trial. The defendant argues a single assignment of error in that denial, based on the failure of the Commonwealth to furnish exculpatory evidence to him. We affirm the conviction.

We summarize the judge's findings and rulings on the motion for a new trial. Before trial, motions were allowed directing the Commonwealth to disclose to the defendant any exculpatory evidence in its possession. Carl Gouveia, the principal witness for the Commonwealth, was under three indictments as an accessory to the murder. At the trial he testified to the presence of a gun in a motor vehicle driven by him in which the victim and the defendant were passengers just before the murder, and to the defendant's use of the gun to kill the victim.

The thrust of the defence, by very capable and subtle cross-examination of Gouveia, was to cast suspicion on him as the murderer. Counsel for the defendant, two to four days before he cross-examined Gouveia, knew that Gouveia had stolen the murder weapon. He did not again press the motion for disclosure of exculpatory evidence, or seek any other remedy; as a trial tactic, he used his knowledge in cross-examining Gouveia in front of the jury so as to make a startling disclosure of the theft and to focus the attention of the jury on Gouveia as the potential murderer because Gouveia had in fact stolen the murder weapon. Over the Commonwealth's objections, Gouveia testified that he had stolen the murder weapon in a housebreak in Teaticket, an area of Falmouth, in which the defendant had participated.

After the conviction counsel filed a stipulation which constituted all of the evidence on the motion for a new trial.[1]

---

[1] "That Bernand Flynn, State Police Detective-Lieutenant in charge of the in-

The judge found that the defendant was not prejudiced to any degree by the failure of the Commonwealth to disclose to counsel the information referred to in the stipulation. He ruled that the defendant's right to due process of law was not abridged, and that the evidence was not unconstitutionally withheld.

1. We first consider the situation as it appeared before Gouveia testified. Unless there was then some indication that the information in question was exculpatory, there could be no "suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment." *Moore* v. *Illinois,* 408 U. S. 786, 794 (1972). See *Brady* v. *Maryland,* 373 U. S. 83, 87 (1963); *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 317-318 (1971); *Commonwealth* v. *Earl,* 362 Mass. 11, 15-16 (1972); *Commonwealth* v. *Roberts,* 362 Mass. 357, 362-363 (1972). The defendant argues that nondisclosure of the facts known to Lt. Flynn prejudiced him in various unspecified ways, resulted in unfair handling of the impeachment of Gouveia, and "destroyed any potential effort to establish a meaningful alibi." But where there is merely a failure of the prosecution to appreciate the use to which the defence could put evidence, even though hindsight discloses that the defence could have put the evidence to not insignificant use, the problems of the courts and the wider interests of society require a substantially higher probability than is shown here that disclosure would have altered the result. See *United States* v. *Keogh,* 391 F. 2d 138, 146-148 (2d Cir. 1968); *Commonwealth* v. *Cassesso,* 360 Mass. 570, 578, n. 5 (1971); *Commonwealth* v. *Earl, supra; Commonwealth* v. *Roberts, supra.*

We pass the point that Flynn, as a police officer not schooled in the law, might have failed to appreciate the

vestigation of this case, had been informed, prior to trial by Carl Gouveia, that the weapon used to shoot the victim had been stolen in a housebreak in Teaticket, on August 7, 1971, by Carl Gouveia, Richard Devlin and the defendant and that Lieutenant Flynn did not communicate that fact to the District Attorney, prior to trial. The District Attorney was not informed that Gouveia had told these facts to Lieutenant Flynn until after Gouveia had testified, but before oral arguments."

significance of the information when an attorney would not, and that defence counsel knew of the theft of the murder weapon before the district attorney knew. See *Commonwealth* v. *Roberts,* 362 Mass. at 362, n. 3 (1972). Compare *Moore* v. *Illinois,* 408 U. S. 786, 810 (Marshall, J., dissenting) (1972). Even if we attribute Flynn's knowledge to the Commonwealth, the Commonwealth knew before trial only that its principal witness, apparently an accomplice in the murder, had also joined with the defendant in a burglary in which the murder weapon was stolen. Evidence of the housebreak might well not be admissible against the defendant, but if it were admitted it would be incriminating rather than exculpatory.

The situation appeared quite different to defence counsel. He represents that he had been told by Devlin that Gouveia had said he had stolen the gun, without indicating where or when, and that Devlin and the defendant, consistently with their later testimony, had denied to him any complicity in the housebreak in which the gun was stolen. Defence counsel thought he was "getting inside information from Devlin," and undoubtedly thought that theft of the murder weapon by Gouveia in a housebreak supported his theory that Gouveia rather than the defendant was the murderer. If defence counsel had known of Gouveia's statements to Flynn, it may be that he would not have opened up the subject of the housebreak in cross-examining Gouveia. But the prejudice, if any, resulting from disclosure of the defendant's participation in the burglary was a product of a deliberate tactical decision of defence counsel rather than of unfair suppression of evidence by the prosecution. See *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 321-322 (1971).

2. After Gouveia testified, the situation was changed. If "the State, although not soliciting false evidence, allows it to go uncorrected when it appears," the defendant is entitled to relief. *Napue* v. *Illinois,* 360 U. S. 264, 269 (1959). *Giglio* v. *United States,* 405 U. S. 150, 153-154 (1972). *Commonwealth* v. *Earl,* 362 Mass. 11, 15, n. 4 (1972). In particular, the possibilities of impeachment by prior inconsistent

statements became more specific after Gouveia testified. We therefore examine the situation which then arose.

On direct examination Gouveia testified to the defendant's activities with the gun in terms suggesting that Gouveia had never seen it before. On cross-examination he testified that he had stolen it in a housebreak in Teaticket "after . . . the month of July, 1971," that Devlin and the defendant participated in the housebreak, and that he did not recall telling anybody about the defendant's participation before the cross-examination. Lt. Flynn, of course, knew that Gouveia had in fact told him before trial about the defendant's participation; Flynn apparently so informed the district attorney before oral argument; and it would have been better if the district attorney had informed defence counsel immediately. Cf. *Commonwealth* v. *Wilson,* 357 Mass. 49, 58 (1970); *Commonwealth* v. *French,* 357 Mass. 356, 399, A-3 (1970). But defence counsel did not renew his request for such information; instead, he argued to the jury that Gouveia had recently contrived the story. The information known to Flynn would have corrected Gouveia's faulty memory, but it would have negated the claim of recent contrivance and thus strengthened rather than weakened Gouveia's testimony. We see no possibility of prejudice to the defendant from nondisclosure in this respect. See *Commonwealth* v. *Heffernan,* 350 Mass. 48, 54-55 (1966); *Commonwealth* v. *Beneficial Fin Co.* 360 Mass. 188, 320-321 (1971); *Commonwealth* v. *Earl,* 362 Mass. 11, 16 (1972); *Commonwealth* v. *Roberts,* 362 Mass. 357, 362-363 (1972).

3. One point remains. The defendant argues that the prosecutor urged the jury to accept a view of the facts contrary to information deliberately withheld by him from defence counsel. For a prosecutor thus to convey a false impression, he asserts, "'invades the area of due process,'" citing *DeChristoforo* v. *Donnelly,* 473 F. 2d 1236, 1240 (1st Cir. 1973), cert. granted, 414 U. S. 974 (1973).

Gouveia told Flynn that the Teaticket housebreak occurred on August 7, 1971, but testified only that it occurred after July. The murder was committed on the night of

August 10-11. Defence counsel argued to the jury that on a view of the evidence favorable to the defendant they could reason that the defendant went to Cape Cod on August 7, that he could not have participated in the housebreak except on August 8 or 9, and that there was no indication that the housebreak took place on either day. The prosecutor in summation pointed out that Gouveia had testified that he and the defendant had gone to Cape Cod on August 3 or 4, and suggested that August 7 was not the first time they went there. The defendant now argues that this was an assertion that the defendant could have participated in the housebreak at any time between August 3 and August 9, when the prosecutor knew that the housebreak took place on August 7.

The prosecutor disputes this interpretation of his summation and states that he was merely correcting a misimpression as to the date the defendant went to Cape Cod. We need not resolve this dispute. It would have been improper for the prosecutor to assert in argument, on the basis of information not in evidence, that the housebreak took place on August 7. It would also have been improper to convey to the jury a materially different impression without disclosing to the defence his contrary information. The prosecutor could have avoided any dilemma by disclosing to the defence the August 7 date. But we have been entirely unable to discover any material difference between a housebreak on August 7 and a housebreak between August 3 and August 9. The housebreak and the defendant's participation in it were collateral to the primary issues of the murder case, and indeed had only marginal relevance to the credibility of Gouveia. Cf. *United States* v. *DeLeo,* 422 F. 2d. 487, 498-499 (1st Cir. 1970), cert. den. 397 U. S. 1037 (1970); *Rinehart* v. *Rhay,* 440 F. 2d 718, 726-727 (9th Cir. 1971), cert. den. 404 U. S. 825 (1971).

4. On our review of the whole case, we find no occasion to order a new trial or to grant any other relief to the defendant. G. L. c. 278, § 33E.

*Judgment affirmed.*