COMMONWEALTH *vs.* RALPH A. PISA.

Middlesex.    June 8, 1976. — May 16, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Practice, Criminal,* Disclosure of evidence, Suppression of evidence by
    prosecutor, New trial, Capital case, Sentence.

There was no error in a denial of a motion for a new trial where the
    defendant failed to demonstrate that certain allegedly withheld evi-
    dence was either exculpatory or material to the issue of his inno-
    cence and where other allegedly exculpatory evidence did not come
    into the Commonwealth's possession until four months after the trial.
    [593-597]
The proper remedy for the constitutionally invalid imposition of the
    death penalty after a conviction of murder in the first degree was
    not a new trial but the imposition of a life sentence. [597]
Upon a review of the evidence presented at the trial of the defendant
    for murder and at the separate trial of another for the same homi-
    cide, this court exercised its power under G. L. c. 278, § 33E, to re-
    duce the verdict against the defendant to guilty of murder in the
    second degree. [597-598]

INDICTMENT found and returned in the Superior Court
on March 10, 1970.

The case was tried before *Paquet,* J., and a motion for
a new trial was heard by *Good,* J.

*James M. Pool* for the defendant.

*Bonnie H. MacLeod-Griffin,* Assistant District Attor-
ney, for the Commonwealth.

LIACOS, J.   The defendant was convicted by a jury on
an indictment charging him with the murder in the first
degree of George W. Deane. The jury returned a verdict
without recommending that the death penalty not be
imposed, G. L. c. 265, § 2, and accordingly the defendant
was sentenced to death. After filing a claim of appeal,
which was not perfected, the defendant moved for a new
trial. G. L. c. 278, § 29. Since the original trial judge had

retired prior to the hearing on the motion, another Superior Court judge was assigned to hear the evidence and rule on the motion. After a three-day hearing the judge denied the defendant's motion for a new trial. The appeal from the denial of that motion is before us pursuant to G. L. c. 278, §§ 33A-33G.

In his motion for a new trial, the defendant asserted six grounds for relief. The defendant did not press three of these claims at the hearing on the motion, nor has he asserted them here, and they are therefore deemed waived. *Commonwealth* v. *Delorey,* 369 Mass. 323 (1975). His assignments of error raised the claim that the denial of the defendant's motion for a new trial on the ground that new evidence of a material nature unavailable to the defense at the time of trial had been discovered, constituted prejudicial error to the defendant. This assignment of error was neither briefed nor argued by the defendant before this court and hence is also deemed waived. S.J.C. Rule 1:13, as amended, 366 Mass. 853 (1975). *Commonwealth* v. *Bys,* 370 Mass. 350 (1976).

The fifth ground asserted in the motion for a new trial was that certain evidence of an exculpatory nature was suppressed by the Commonwealth during the trial. The motion judge ruled that the allegedly suppressed exculpatory evidence was neither suppressed, nor exculpatory, nor of a sufficiently material nature to require a new trial. The sixth ground asserted for a new trial was that the sentence of death imposed pursuant to G. L. c. 265, § 2, was illegal. The motion judge ruled that the illegality of the original death sentence could be cured by imposing a new sentence of life imprisonment, and no new trial was required.

The defendant asserts here that these latter two rulings constitute error. He also asks that we order a new trial under the broad powers granted us by G. L. c. 278, § 33E.

The evidence presented against the defendant was essentially circumstantial in nature. It is not necessary to restate it at length here. A significant part of the prosecution's case consisted of testimony of a taxi driver placing

the defendant and two other unidentified men in the company of the victim in East Boston about 2 A.M. on September 9, 1969. This was the last time that anyone other than those who may have caused his death saw the victim until his body was discovered in the Malden-Melrose area around 7 A.M. on the morning of September 9, 1969. The time of death was placed at between 3 and 5 A.M. of that day. The cause of death was attributed to six gunshot wounds which were fired from the gun of the victim, a security guard, who was seen in possession of that weapon during the evening in question.

The prosecution presented evidence as to an alleged statement of the defendant to one Francis Dion in January, 1970, at the Clam Shell bar in Peabody as follows: "You remember the guard at the Arsenal? Well, I shot him" and further that the shooting had not bothered him but that he had enjoyed it.

Another significant part of the Commonwealth's case involved evidence as to an automobile rented by one Roy White after the date of the homicide.[1] There was evidence that White and Pisa were friends, that Pisa was present when the car was rented by White, and that Pisa had been a passenger in this car on at least one occasion. This automobile was rented by White on October 2, 1969, and repossessed by the rental agent on October 19, 1969, for lack of payment. The next morning the defendant, who had rented a similar car on October 10, 1969, showed up at the rental agency which also served as a gasoline station and claimed that his car had broken down. He asked for assistance. He was told that he would have to wait until another employee showed up at the gasoline station. Sometime during the waiting period the defendant spotted

---

[1] White was tried separately for the same homicide after Pisa was convicted and was found guilty of murder in the second degree. That conviction has been affirmed by this court. See *Commonwealth* v. *White,* 363 Mass. 682 (1973). The transcript of the White trial was an exhibit at the hearing on the motion for a new trial. Hence our review here includes that transcript as well as that of the Pisa trial (including the pre-trial hearing) and the transcript of the hearing on the motion for a new trial.

White's car, asked if it was such, had the identification confirmed, and asked if he could search it in order to find a "brown bag" with personal belongings in it. An attendant at the rental agency testified that the defendant asked for a brown paper bag. Permission to search was refused due to the status of the car. When asked to describe the bag in greater detail at his trial where he testified in his own behalf, the defendant testified, however, that it was "beige, like a suede . . . a woman's bag."

When the car was searched that same day a brown paper bag was found in the trunk. In the bag were two guns, one of which was identified as the gun belonging to the victim, and later identified as the murder weapon.

At the defendant's trial there was testimony that the only brown bag of any description found in the car was the brown paper bag containing the murder weapon. However, at the White trial there was evidence that a second bag containing keys was found in the trunk of the car. No further description of this second bag was placed in evidence at either trial or at the hearing on the motion for a new trial. At the hearing on the new trial motion, there was evidence that still a third bag, a brown paper bag containing pantyhose, was found in the White rental automobile.

1. The defendant claims that the presence of either of the bags in the White rental car was exculpatory in nature and that the failure of the prosecution to acknowledge or reveal the existence of such evidence is error requiring a new trial.

It is the defendant's argument that the failure to disclose such evidence is error of constitutional dimension requiring a new trial because the withheld evidence is both exculpatory, *Brady* v. *Maryland*, 373 U.S. 83 (1963), and material to the issue of his innocence. *Commonwealth* v. *Hurst*, 364 Mass. 604 (1974). *United States* v. *Agurs*, 427 U.S. 97 (1976). The defendant premises this argument on two points. First, he claims that if the jury had known of another bag's existence this would have rebutted and, indeed, foreclosed the prosecution's "consciousness of

guilt" argument based on Pisa's apparent attempt to recover the murder weapon from the White car. Second, the defendant argues that if the jury had known of another bag's existence it would have bolstered Pisa's credibility in so far as he made reference to a brown bag in his testimony.

The Commonwealth on the other hand argues that it did not suppress or withhold any evidence and that, in any event, the second bag was neither exculpatory nor material to the issue of the defendant's innocence, and that it was not error, in the absence of a specific request, to fail to acknowledge or reveal the existence of the second bag. The judge agreed with the position taken by the Commonwealth. We find no error.[2]

The "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* v. *Maryland, supra* at 87. Accord, *Commonwealth* v. *DeChristoforo,* 371 Mass. 26, 35-36 (1976); *Commonwealth* v. *Donahue,* 369 Mass. 943, 952-953, cert. denied, 429 U.S. 833 (1976); *Commonwealth* v. *Gilday,* 367 Mass. 474, 487 (1975); *Commonwealth* v. *Hurst,* 364 Mass. 604, 607 (1974); *Commonwealth* v. *Earl,* 362 Mass. 11 (1972); *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 317 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 (1972); *United States* v. *Agurs, supra.* However, before the defendant can take advantage of the *Brady* rule as the predicate to establish-

---

[2] We note that the defendant claimed intentional suppression of the evidence by the prosecution, a claim he retracted at the hearing on the motion for a new trial. Although the defendant now appears to argue error on the basis of failure to disclose rather than suppression, many of the authorities relied on by him deal with suppression problems as distinguished from failures to disclose. In any event, there appears no claim of active prosecutorial misconduct. See *Mooney* v. *Holohan,* 294 U.S. 103 (1935). Hence, we need not reach this latter question. Under the view we take, such distinctions as may be relevant between suppression and failure to disclose situations become immaterial.

ing the constitutional error necessary for a grant of a new trial, *Earl* v. *Commonwealth,* 356 Mass. 181 (1969), he must first show that the evidence withheld is "favorable to the accused ... [and] ... material ... to guilt ...." *Brady* v. *Maryland, supra* at 87. Cf. *Commonwealth* v. *Gilday, supra.*

In the case at bar the defendant submitted a general request for all exculpatory evidence, a motion which was granted in part and denied in part. There was no specific request for a second bag. The standards of both the exculpatory quality and the materiality of the evidence sought must be judged in light of the fact that a prosecutor cannot be expected to appreciate the significance of every item of evidence in his possession to any possible defense which might be asserted by the defendant. *Commonwealth* v. *Hurst, supra. Commonwealth* v. *Earl, supra.*

We do not believe that the defendant has demonstrated that the allegedly withheld evidence is either exculpatory or material to the issue of the defendant's innocence. See, e.g., *Commonwealth* v. *Donahue, supra.* Exculpatory evidence is that evidence which tends to "negate the guilt of the accused" (ABA Pattern Rules of Court and Code Provisions, Rule 7-1.1[c] [Rev. ed. 1976]), or, stated affirmatively, "supporting the innocence of the defendant" (ABA Pattern Rule 2-3.11[a]). If it cannot be demonstrated that the evidence allegedly withheld is exculpatory, the issue of materiality need not be reached. *Commonwealth* v. *Gilday, supra. Commonwealth* v. *Donahue, supra.*

In this case the motion judge properly found that the allegedly exculpatory evidence, either the brown paper bag containing pantyhose or the bag containing keys, cannot be said to be exculpatory. Pisa's request to search the White rental car, as testified to by the attendant at the car rental agency, was to look for a "brown paper bag." The Commonwealth utilized this evidence to create an inference that Pisa knew the car to contain the murder weapon and, hence, his acts indicated a "consciousness of guilt." Had Pisa himself testified in accord with the at-

tendant's testimony then a serious issue relative to the substantive proof against Pisa and his credibility as a witness might have been raised by the failure of the prosecution to disclose the existence of the second bag. However, Pisa in his own testimony stated that he asked for a brown suede bag with a zipper, not a brown paper bag. Thus, even if the jury had been aware of the existence of a paper bag, it would not have bolstered Pisa's credibility in so far as the nature of the other bags varied substantially from the bag described in Pisa's testimony. Furthermore, knowledge of another bag would not have had an effect on the degree of substantive proof against him. Even if the jury had chosen to discredit the attendant's version of the conversation and credit Pisa's, it does not negate the possible inference that could be drawn, which is that Pisa was desirous of inspecting White's car under a pretext in order to prevent discovery of the murder weapon. If the existence of a second bag was known at a new trial we do not believe that the knowledge of such evidence would be either exculpatory or result in a sufficiently significant possibility of a different verdict to justify a retrial. *Commonwealth* v. *Hurst, supra*. Even assuming a prosecutorial failure to disclose this evidence, it cannot be said on this record that the omission was of "sufficient significance to result in the denial of the defendant's right to a fair trial." *Commonwealth* v. *Dabrieo*, 370 Mass. 728, 743 (1976), quoting from *United States* v. *Agurs, supra* at 108.

The defendant has also alleged that the Commonwealth withheld evidence of a dinner check possessed by one McMahon who testified at the trial of White. It was alleged that this dinner check would have further corroborated Pisa's alibi testimony. The motion judge found, however, that the Commonwealth did not come into possession or have knowledge of the existence of the dinner check until four months after the Pisa trial, and our review of the evidence presented at the hearing on the motion shows that this finding is supported by the evidence. Since the Commonwealth cannot be said to have withheld evidence which it did not possess at the time of the defend-

ant's trial we conclude, as did the judge below, that the defendant's contention is without merit.

2. The defendant has asserted as error in assignment of error numbered four the failure to grant a new trial due to the imposition of the death penalty prior to *Furman v. Georgia,* 408 U.S. 238 (1972). We have held previously that the proper remedy for this is not a new trial but the imposition of a life sentence. *Commonwealth* v. *Cassesso,* 368 Mass. 124 (1975). The defendant was afforded the proper remedy and this claim of error is without merit. See *Commonwealth* v. *Gilday,* 367 Mass. 474, 485-486 (1975).

3. The issue of the dinner check and the issues raised by the testimony of various witnesses at the White trial have led the defendant to urge us to exercise our broad powers under G. L. c. 278, § 33E, to order a new trial because of the gross inconsistency presented by the evidence at the trial of the defendant as compared with that presented at the trial of White. The defendant argues, in essence, that the direct evidence presented in the latter trial so conflicts with the circumstantial case presented against Pisa that a substantial doubt is raised as to the credibility of the evidence at the first trial, thus necessitating the relief sought.

We note, in passing, that the mere inconsistency of the verdicts — i.e., that one jury found Pisa guilty of murder in the first degree and another found White guilty of murder in the second degree — is not ordinarily enough to impel us to exercise our powers under § 33E. *Commonwealth* v. *Simpson,* 370 Mass. 119 (1976). We have stated also that the power we have under that statute is to be used with restraint. *Commonwealth* v. *MacDonald,* 371 Mass. 600 (1976). The power we have, however, imposes on us an obligation of "the most serious deliberation." *Commonwealth* v. *Williams,* 364 Mass. 145, 151 (1973). Although the motion judge found that a new trial ought not be granted — and we find no error therein — our power under § 33E is broader than that invested in a judge hearing such a motion. *Commonwealth* v. *Mazza,* 366 Mass. 30 (1974).

In some ways, the record here is unusual to the extent that the entire transcript of the White trial as well as the transcript of the Pisa trial and the transcript of the hearing on the motion for a new trial are part of the record before us.[3] We have carefully reviewed these transcripts. Our review of these transcripts convinces us, although the two prosecutions (and defenses) proceeded on entirely different theories, that the evidence presented at the White trial was even more compelling as to Pisa's guilt for the homicide than that which was presented against him at his own trial.[4] The evidence of Pisa's guilt presented at his trial was clearly sufficient to warrant a verdict of guilt for the crime of murder. Nevertheless, it also seems clear that the evidence of murder in the first degree as distinguished from that of murder in the second degree is much less persuasive. While the evidence in the Pisa trial warrants the jury's finding as matter of law, we think that "justice requires"[5] that the verdict be reduced to a verdict of guilty of murder in the second degree. See *Commonwealth* v. *Williams, supra.*

4. The case is remanded to the Superior Court where the verdict of guilty of murder in the first degree and the sentence previously imposed are to be vacated. A verdict of guilty of murder in the second degree is to be entered and sentence is to imposed thereon.[6]

*So ordered.*

---

[3] See note 1, *supra.*

[4] See the summary of the White trial evidence in *Commonwealth* v. *White,* 363 Mass. 682 (1973).

[5] G. L. c. 278, § 33E.

[6] Subsequent to the entry of this appeal and to oral argument thereof, the defendant, pro se and without knowledge of his counsel, submitted a letter to the court alleging a conflict of interest by one of the members of the prosecution's appellate team of attorneys. Since such allegations are not a part of this record nor are the facts or significance of such alleged conflict established, we do not reach the issue of whether such conflict, if any, taints this appeal as defendant suggests. Since we have not reached this issue and intimate no opinion thereon, nothing we decide here shall be taken to foreclose whatever remedies, if any, the defendant may seek. Cf. *Commonwealth* v. *Geraway,* 364 Mass. 168 (1973).