Ralph A. PISA, Petitioner,

v.

Joseph STREETER, Respondent.

Civ. A. No. 79–2229–MA.

United States District Court,
D. Massachusetts.

June 16, 1980.

John Cavicchi, Boston, Mass., for petitioner.

Roberta Thomas Brown, Asst. Atty. Gen., Boston, Mass., for respondent.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is a petition for a writ of habeas corpus in which the petitioner claims that the Commonwealth of Massachusetts, in obtaining a conviction for murder in the second degree and incarcerating him on that verdict, denied him of rights secured by the Fifth, Sixth, and the due process clause of the Fourteenth Amendment to the United States Constitution.[1]

The record establishes the following facts. The petitioner was convicted of the murder of George W. Deane in the Middlesex County Superior Court. He was sentenced to the statutory life imprisonment, Mass.Gen.Laws c. 265 § 2, and is presently incarcerated at the Massachusetts Correctional Institution at Norfolk. Pursuant to the petitioner's appeal from a denial of a motion for new trial, the Supreme Judicial Court, on May 16, 1977, affirmed the denial,

but reduced the judgment of conviction to murder in the second degree finding the "justice requires" an adjustment of the verdict to the lesser included offense of second degree murder. *Commonwealth v. Pisa*, 372 Mass. 590, 598, 363 N.E.2d 245 (1979). The petitioner then filed a writ of error in the Supreme Judicial Court asserting an alleged conflict of interest by one of the members of the prosecution's appellate team. This petition was referred to a single justice who, after referring the matter to a special master, denied the relief sought. The single justice's determination was later confirmed by the Supreme Judicial Court. *Pisa v. Commonwealth*, Mass., 393 N.E.2d 386 (1979). Pisa then petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

For purposes of this action,[2] we accept the Supreme Judicial Court's findings of fact. *Cuyler v. Sullivan*, —— U.S. ——, ——, 100 S.Ct. 1708, 1713, 64 L.Ed.2d 333 (1980); 28 U.S.C. § 2254(d). The facts underlying the petitioner's petition for a writ of error were as follows. After the petitioner was convicted of first degree murder, he filed a motion for a new trial in the Superior Court. This motion was denied after hearing. Petitioner thereafter appealed the trial court's denial of his new trial motion to the Supreme Judicial Court pursuant to Mass.Gen.Laws c. 278 §§ 33A–33G. *Commonwealth v. Pisa, supra*, 372 Mass. at 591, 363 N.E.2d 245. Subsequent to the entry of the appeal and after oral argument by the parties, the petitioner wrote a letter to the justices of the Supreme Judicial Court alleging a conflict of interest by one of the members of the prosecution's appellate group. *Commonwealth v. Pisa, supra* at 598 n.6, 363 N.E.2d 245. The Supreme Judicial Court did not act on this new claim. *Id.*

The petitioner then sought a writ of error based on his claim of conflict. An associate justice, sitting as a single justice, referred

---

1. The petitioner filed an earlier petition for writ of habeas corpus which was denied by this Court. *See* Memorandum and Order, June 13, 1980, Civil Action No. 79–778–MA.

2. The petitioner does not claim that he did not receive a full and fair hearing in the state court. *See, Grace v. Butterworth*, 586 F.2d 878 (1st Cir. 1978).

the matter to a special master who, after hearing, issued findings of fact regarding the petitioner's claim. The master found that a lawyer worked as a research assistant for petitioner's trial counsel in 1973 while he was in law school. During that period, the lawyer—then law student—prepared a memorandum of law in support of the petitioner's motion for a new trial. He also had access to the petitioner's file and sat in on strategy discussions between petitioner and his counsel and may have otherwise contributed to the petitioner's effort to secure a new trial following his conviction for first degree murder.

In the fall of 1974, the former law student was admitted to the Massachusetts Bar. Following his admission, he joined the office of the district attorney for Middlesex County. Upon his arrival at the district attorney's office, he advised his superiors that he could not write briefs or otherwise participate in certain pending cases, including the *Pisa* case.

In May, 1976, an assistant district attorney for Middlesex County prepared a draft brief which, when in final form, was to be presented as the Commonwealth's brief to the Supreme Judicial Court in the *Pisa* matter. This assistant district attorney asked or directed the lawyer to proof-read the draft for errors in grammar and script. The lawyer was also asked to check citations. He did as instructed but did not provide any confidential information regarding the petitioner's position and did not do any research relating to the matter. Nor did he make any substantive changes in the manuscript.

The final brief was typed, printed and filed with the Supreme Judicial Court on the same day. As filed, the brief indicated that the lawyer had participated in its preparation. Shortly thereafter, the assistant district attorney assigned to the matter told petitioner's counsel that she prepared the brief and that the lawyer had not written

the document. Petitioner's counsel accepted this representation without quarrel.

The Supreme Judicial Court denied the petitioner's application for a writ of error, holding that the lawyer's participation was "minimal" and that, in any event, the petitioner was not prejudiced by his role.

The first issue before this Court is whether the asserted conflict of interest was so egregious as to render the petitioner's appeal fundamentally unfair and therefore deny him due process of law. The second issue is whether the asserted conflict of interest was such that it denied the petitioner of effective assistance of counsel during the proceedings against him.

For purposes of these proceedings, we consider that the lawyer, while he was a law student working under the direct supervision of an attorney, was and continues to be subject to the ethical standards of lawyers with respect to the petitioner's confidences. ABA Code of Professional Responsibility, Canon 4 (1971); *see,* S.J.C. Rule 3:11. Moreover, because he was privy to the confidences which the petitioner shared with his counsel, we conclude that an attorney-client relationship was established with the petitioner. The lawyer is bound therefore to conduct himself in accordance with the Code of Professional Responsibility regarding the petitioner's interests.[3]

 We turn to the Sixth Amendment claims first. It is now well-established that the Sixth Amendment affords criminal defendants a right to enjoy effective assistance of counsel at all "critical stages of [criminal] proceedings" *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967); *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). The right to counsel "contemplates the services of an attorney devoted solely to the interests of his client" and requires that a lawyer extend "[u]ndivided allegiance and faithful, devoted service to his client." *Von Moltke v. Gillies,*

---

**3.** ABA Code of Professional Responsibility, Canon 9 (1971). The lawyer's superiors, as lawyers, were also bound to respect his ethical responsibilities and should have refrained from causing or allowing him to perform any task which would give rise to the appearance of an impropriety.

332 U.S. 708, 725–26, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948). And this right to counsel extends to criminal defendants seeking appellate review of their convictions. *Douglas v. California,* 372 U.S. 353, 356–58, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811 (1963).[4] Thus, a criminal defendant has a right to counsel, at the trial or appellate stage, who extends his or her undivided loyalty to the interests of the client.

■ Based on the record, we cannot accept the petitioner's claim that he was deprived of effective assistance of counsel. The petitioner was represented by able counsel in his appeal. There is no claim that counsel failed to adequately and effectively advocate the petitioner's claims or that he maintained some ties with the Middlesex County district attorney's office which impaired his loyalties to Pisa. Instead, the petitioner appears to have enjoyed the unimpaired loyalty of counsel during the prosecution of his appeal. Petitioner was not, therefore, deprived of the presence and untrammeled assistance of his own counsel at a critical stage of the litigation. *See, Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). We also note that even though the lawyer had joined the prosecutorial forces there is no allegation or evidence that appellate counsel was, during the relevant period, serving two masters, the Commonwealth and Pisa, concurrently and, accordingly, depriving the petitioner of his undivided loyalties. *See e. g., Ganger v. Peyton,* 379 F.2d 709 (4th Cir. 1967).

■ Petitioner's due process argument is likewise lacking in merit. While we do not approve of the Commonwealth's actions with respect to the preparation of its brief in petitioners' appeal, we cannot say that the lawyer's participation and assistance in the preparation of the brief resulted in depriving the petitioner of rights secured by the Due Process clause of the Fourteenth Amendment. *Cf., Mooney v. Holohan,* 294 U.S. 103, 112–13, 55 S.Ct. 340, 341–42, 79 L.Ed. 791 (1935).

■ In deciding whether the petitioner's due process rights were violated, we are mindful that the due process clause "inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings [resulting in a conviction] in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice . . . toward those charged with the most heinous offenses." *Malinski v. New York,* 324 U.S. 401, 416–17, 65 S.Ct. 781, 789, 89 L.Ed. 1029 (1945). Due process of law has become, therefore, a constitutional guarantee which is "so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), and is "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). It is not, however, a concept that is "final and fixed," *Rochin v. California,* 342 U.S. 165, 170, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952), but remains an indefinite and vague concept. *Id.* Thus, the due process clause is violated when the state acts in such a way as to "shock the conscience" through behavior which offends a "sense of justice" or runs counter to the "decencies of civilized conduct." *Rochin v. California, supra* at 169–172, 72 S.Ct. at 208–209.

After the Superior Court denied the petitioner's motion for a new trial,[5] his lawyer appealed the determination pursuant to Mass.Gen.Laws c. 278 §§ 33A–33G. In his capacity as counsel for the appellant, petitioner's counsel was obliged to frame the claimed trial errors. Mass.Gen.Laws c. 278 §§ 31, 33D. Pisa's counsel, not the Commonwealth, was therefore obligated to or-

---

**4.** Petitioner's appeal was claimed pursuant to Mass.Gen.Laws c. 278 §§ 33A–33G.

**5.** Petitioner's motion for a new trial was filed after his original claim of appeal failed. *Com-*

*monwealth v. Pisa, supra,* 372 Mass. at 590, 363 N.E.2d 245.

The petitioner's motion for a new trial was filed in the Superior Court pursuant to Mass. Gen.Laws c. 278 § 29.

ganize, draft and present the issues to the Supreme Judicial Court in *Commonwealth v. Pisa.*[6] This was presumably accomplished by Pisa's appellate lawyer. Both parties filed briefs with the Supreme Judicial Court. S.J.C. Rule 1:16.

In *Commonwealth v. Pisa*, the Supreme Judicial Court was faced with the Superior Court record, the issues of law raised by the petitioner's counsel, and the parties' arguments relating to those issues. In light of this, there was little, if anything, the lawyer could do at that point to prejudice Pisa's rights before the Supreme Judicial Court. Having orchestrated the legal questions, the petitioner's counsel had the opportunity to present arguments which, in his judgment, were most likely to result in a favorable determination. Logically, therefore, it does not appear that the lawyer could have significantly altered the petitioner's chances before the appellate tribunal even if he had divulged confidential information to other members of the prosecutorial team because he was unable to change the trial court record, influence the selection of issues or, finally, vary the applicable law.

We have little reluctance in concluding that the petitioner was not deprived of "fundamental fairness" before the Supreme Judicial Court as a result of the lawyer's participation on behalf of the Commonwealth. This situation is, concededly, different from a conflict of interest by *trial* counsel. In the trial setting, prejudice is *presumed* when a criminal defendant demonstrates that a conflict of interest actually affected the adequacy of his representation. *Cuyler v. Sullivan, supra* at ——, 100 S.Ct. at 1717. We cannot, however, apply this standard to the facts in this case. Here, unlike the trial setting, there was little that the lawyer, while armed with confidential information provided to him by the petitioner and the petitioner's trial counsel, could do to affect the outcome of the appeal because there was nothing he could do or refrain from doing which would impact the quality of the advocacy on behalf of the petitioner. *See, Holloway v. Arkansas, supra,* 435 U.S. at 490–91, 98 S.Ct. at 1181–82.

We recognize that the action taken by the prosecutorial team, including the lawyer, disregarded, albeit unintentionally, some of the ethical standards for lawyers, ABA Code of Professional Responsibility, EC4–4, EC4–5, EC9–3 (1971), but, nevertheless, we refuse to conclude that a possible breach of these obligations in this setting gives rise to a due process deprivation. The impact, if any, of the lawyer's representation of interests adverse to those of a prior client was, in this case, *de minimus* and therefore did not deprive the petitioner of "fundamental fairness." *See, People v. Dyer*, 328 N.E.2d 716, 721, 28 Ill.App.3d 436 (1975); *Surrette v. State*, 251 So.2d 149, 151 (Fla.App.1971).

Petitioner's third claim, namely, that the associate justice Ruth B. Abrams should have disqualified herself from handling the writ of error because she was at one time a member of the Middlesex District Attorney's office is without merit.

The petition for writ of habeas corpus is denied.

---

**6.** Petitioner claimed six grounds for relief in *Commonwealth v. Pisa*. Certain of the claimed errors were not briefed by Pisa's counsel and certain other issues were not appropriate for review under the denial of the motion for a new trial. *Commonwealth v. Pisa*, supra at 591, 363 N.E.2d 245. Thus, the Supreme Judicial Court considered only the fifth and sixth asserted errors. *Commonwealth v. Pisa, supra* at 591, 363 N.E.2d 245.