NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-1702                                          Appeals Court

COMMONWEALTH vs. ALI MCMILLAN.

No. 18-P-1702.

Essex.     November 12, 2019. - September 16, 2020.

Present: Rubin, Wolohojian, & Henry, JJ.

Controlled Substances. Practice, Criminal, Conduct of
     government agents, Discovery, Disclosure of evidence,
     Disclosure of identity of surveillance location,
     Confrontation of witnesses, New trial. Evidence,
     Disclosure of evidence, Exculpatory, Cross-examination.
     Witness, Cross-examination. Constitutional Law, Conduct of
     government agents, Confrontation of witnesses. Due Process
     of Law, Disclosure of evidence.

Complaint received and sworn to in the Lynn Division of the
District Court Department on September 11, 2014.

The case was tried before James D. Barretto, J., and a
motion for a new trial, filed on July 30, 2018, was considered
by him.

Amy Codagnone for the defendant.
Kayla M. Johnson, Assistant District Attorney, for the
Commonwealth.

RUBIN, J. The defendant was convicted of distribution of a

class A substance in violation of G. L. c. 94C, § 32 (a). The

defendant appeals from his conviction and the denial of his motion for a new trial, in which the defendant raised numerous claims based on the Commonwealth's delayed disclosures and suppression of exculpatory, material pieces of evidence. Because those discovery violations, and the procedure implemented at trial to address some of them, violated the defendant's due process rights, we reverse the order denying the defendant's motion for a new trial and the defendant's conviction.

Background.  On June 21, 2011, as part of an operation by the North Shore Gang Task Force (NSGT or task force),[1] special agents of the Federal Bureau of Investigation (FBI) and officers of several local law enforcement agencies planned a controlled purchase of narcotics.  The purchase was to take place in the area of Vine Street in Lynn, utilizing a confidential informant (CI).  The task force had utilized this CI in other controlled purchase operations in the North Shore area around this time. On June 21, 2011, officers drove with the CI to Lynn Technical High School.  An officer utilized standard FBI protocol, routinely used by this task force, to search the CI for any

---

[1] The NSGT is a federally funded task force staffed by FBI special agents, officers from the Essex County Sheriff's Office, State police troopers, and officers of the Lynn Police Department, among others.

outside drugs on his person.  Officers then gave the CI $650, and released the CI in the Vine Street area.[2]

Officers on the task force took up surveillance positions along Vine Street to monitor the CI and observe the controlled purchase.  Special Agent McEachern, along with another officer, remained near Lynn Technical High School.  Sergeant Avery was stationed near the intersection of Vine Street and Summer Street.  Detective Withrow and another officer were stationed in a vehicle on Huss Court, another street off Vine Street.  From over one hundred feet away, Detective Withrow saw the CI walk to the corner of Vine Street and Warren Street, greet the defendant, and shake his hand; he then saw a hand-to-hand exchange in which the CI gave the defendant the controlled purchase money.  The CI then returned to the officers at Lynn Technical High School.  The CI turned over a clear plastic bag to Special Agent McEachern containing what was later tested and confirmed to be heroin.

Based on this evidence, the defendant was charged with distribution of a class A substance in violation of G. L.

---

[2] While officers had affixed an audio-visual recording device to the CI to record the controlled purchase, this device could be turned off by the CI at any time.  Because the device stopped recording while the CI walked down the street, the device failed to record any evidence of an exchange with the defendant.

c. 94C, § 32 (a).[3]  In pretrial discovery, the defendant specifically requested the locations from which each police officer's surveillance of the CI and the controlled purchase was conducted.  The Commonwealth provided a single surveillance location, 27-29 Huss Court.  In response to a request from the defendant, the Commonwealth filed a witness list naming only six witnesses, including Special Agent McEachern and Detective Withrow, but not Sergeant Avery.

The Commonwealth also provided information, although incomplete, about misconduct by the CI who conducted the controlled purchase in this case.  An undated affidavit from Detective Withrow stated:

> "I believe that [the CI] has lied to the FBI about material matters during the course of the investigation.  For example, [the CI] told the FBI that certain controlled buys of drugs cost more than they actually cost and kept the difference in official government currency provided . . . for those buys (it appears that this typically involved $50-$200).  [The CI] has admitted that it stole that money.  [The CI] has also admitted to the FBI that it lied to the FBI about a phone call that [the CI] had with a target of the investigation (i.e., [the CI] described the contents of a particular phone call as involving drug conversation when, in fact, the recording of the call indicated that [the CI] did not make contact with the target). . . .  [The CI] also has an open case for theft of government property and false statements in connection with [the CI's] theft of money provided to it for controlled buys, as described above."

---

[3] The defendant was also charged with four counts of distribution of a class B substance as a subsequent offense. Two of these counts were dismissed by the court at the request of the Commonwealth and on the remaining two counts, the Commonwealth filed a nolle prosequi.

A 2013 FBI report turned over by the Commonwealth gave some details of unauthorized illegal activity by the CI.  The 2013 FBI report stated that the CI admitted that he "skimmed money during three separate purchases of narcotics totaling approximately $150.  The [CI] hid the money in his shoes."

The Commonwealth also had in its possession prior to trial, but failed to disclose to the defendant, additional information concerning the CI's misconduct, information it had been ordered in another case to provide, including the dates of the CI's theft of controlled purchase money, the names of other cases in which the CI had been an informant and had committed misconduct, the fact that the CI had pleaded guilty to five counts of theft of government property and three counts of making false statements, and the fact that the CI had stolen $685 from the FBI on five occasions, rather than $150 on three occasions as he had confessed and as had previously been indicated by the 2013 FBI report.  The CI's misconduct occurred during the joint State and Federal investigation called "Operation Whiplash" (joint investigation), of which the investigation and prosecution of the defendant were a part, by the same task force that undertook the investigation in the instant case; the same monitoring protocol utilized in this case was followed in each controlled

purchase during which the CI stole purchase money and hid it in his shoe, yet avoided detection.

The Commonwealth was unable to produce the CI at the time of trial in this case as the CI was, in the prosecutor's words, "in the wind."  Over the defendant's objection, the judge initially excluded all evidence of the unavailable CI's criminal activities, including stealing money from law enforcement agencies during controlled purchases.  The Commonwealth argued, and the judge concluded, that if there was constant police observation of the CI in this case, the evidence as to the CI's credibility was irrelevant.  The judge determined that the CI's history of lying and committing misconduct would add nothing to the jury's understanding of the case, where the CI was not a witness and testifying witnesses could account for his actions during each moment of the controlled purchase.

The judge, therefore, did not permit cross-examination of any Commonwealth witnesses about the reliability of the CI, the fact that the CI was paid by the NSGT, or other occasions in which NSGT officers failed to observe the CI -- whether through an inability to see him or inattentiveness -- when the CI was hiding money in his shoe during other controlled purchases during the joint investigation at issue in this case.  This ruling was, however, predicated on the Commonwealth's ability to

prove that officers had the CI under constant police surveillance during the controlled purchase in this case.

On the second day of trial, it became apparent that the witnesses on the Commonwealth's witness list could not provide testimony demonstrating constant surveillance of the CI during the controlled purchase. The Commonwealth reported that it would need an additional witness, Sergeant Avery, to establish the absence of a gap in police surveillance. Over the defendant's objection, the judge permitted the Commonwealth to call Sergeant Avery as a witness, despite the fact that Sergeant Avery's name was not on the witness list provided to the defendant before trial.

Even with Sergeant Avery's testimony however, the judge found that the Commonwealth had failed to establish constant police surveillance of the CI, thereby making the CI's credibility and history of misconduct relevant, permissible grounds for the defendant's inquiry. Consequently, but only after the close of the Commonwealth's case, the judge allowed the defendant, as part of his own case-in-chief, to recall a single witness, Detective Withrow, to conduct a "circumspect" examination about the CI's misconduct.

It was also revealed for the first time during the course of trial that the Commonwealth had disclosed to the defendant the incorrect location for the point from which Detective

Withrow conducted his surveillance.  He was not at 27-29 Huss Court, but in a parking lot across the street closest to 32 Huss Court.  Sergeant Avery also testified as to the location from which he conducted surveillance, a location that the Commonwealth had not provided to the defendant prior to trial, despite the discovery request described above.  The defendant's objection to Sergeant Avery's surprise testimony, on the grounds that he had had no opportunity to investigate Sergeant Avery's location, was overruled.

The jury found the defendant guilty as charged.  At trial, Detective Withrow provided the only evidence linking the defendant to this controlled purchase; he alone testified that the CI had engaged in a hand-to-hand exchange with the defendant.  The Commonwealth presented no other evidence that the defendant had distributed narcotics on June 21, 2011.

Following trial, a private investigator hired by defense counsel investigated and took photographs from the actual surveillance locations disclosed for the first time during trial.  These photographs demonstrated that, contrary to assertions made by the officers at trial, their vantage points would have provided significantly obstructed views of the CI as he went to and from the alleged controlled purchase.  The defendant presented this undisputed evidence to the trial judge in his motion for a new trial, in which he raised a number of

discovery violations and delayed disclosures by the Commonwealth.

The motion for a new trial identified numerous discovery violations:  1) in response to a specific request to disclose surveillance locations for the controlled purchase, the Commonwealth provided an inaccurate location from which Detective Withrow supposedly saw the controlled purchase occur; 2) defense counsel was not given an opportunity to investigate the location from which Sergeant Avery undertook his surveillance; and 3) the Commonwealth withheld evidence of the CI's full history of misconduct and theft from the NSGT.

The judge denied the new trial motion in a two-page order without an evidentiary hearing.  The defendant filed a notice of appeal, and his direct appeal and his appeal from the denial of his motion for a new trial are consolidated here.

Discussion.  1.  Denial of the defendant's new trial motion.  We review the judge's denial of the defendant's motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), for significant errors of law or other abuses of discretion.  Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  Here, the judge made no specific findings as to the individual merits of each of the defendant's claims and gave no substantive written explanation for his denial of the motion.  As the defendant has demonstrated that he

was prejudiced by discovery violations, we conclude that the judge abused his discretion in denying the motion for a new trial.

We begin with the Commonwealth's obligations under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97, 106 (1976), to provide the defendant with an accurate location from which officers observed the controlled purchase.

In response to a specific discovery request for the locations from which surveillance was conducted, and after being ordered by the court to provide such information, the Commonwealth provided to the defendant a single, incorrect surveillance location before trial. In accordance with due process, "the government is constitutionally obligated to disclose material, exculpatory evidence for which a defendant has made a specific request." Commonwealth v. Sullivan, 478 Mass. 369, 380 (2017). See Commonwealth v. Ellison, 376 Mass. 1, 21 (1978). We consider evidence to be exculpatory when it "tends to negate the guilt of the accused . . . or, stated affirmatively, support[s] the innocence of the defendant" (quotations omitted). Commonwealth v. Pisa, 372 Mass. 590, 595, cert. denied, 434 U.S. 869 (1977). Evidence that must be turned over is "that 'which provides some significant aid to the defendant's case[,] . . . calls into question a material, although not indispensable, element of the prosecution's version

of the events, or challenges the credibility of a key prosecution witness.' [Ellison, supra at 22]." Commonwealth v. Baldwin, 385 Mass. 165, 175 (1982). Impeachment evidence is "clearly exculpatory." Commonwealth v. Hill, 432 Mass. 704, 715-716 (2000), quoting Commonwealth v. Collins, 386 Mass. 1, 8 (1982).

In this case, the officers' vantage points determined whether they could have had continuous surveillance during the controlled purchase by the CI who, on previous occasions during the same joint investigation, had, despite claimed surveillance by officers of the task force, managed to engage in unlawful and unobserved conduct during other controlled purchases. The undisputed evidence of photographs taken from the officers' actual vantage points presented on the motion for a new trial demonstrated that the information would have led to valuable evidence that could have been used on cross-examination. The Commonwealth here plainly failed to disclose in pretrial discovery evidence that was material and exculpatory.

As in Baldwin, however, because the evidence was revealed at trial, this is a case of delayed disclosure rather than complete suppression. In such cases, "it is the consequences of the delay that matter, not the likely impact of the nondisclosed evidence, and we ask whether the prosecution's disclosure was sufficiently timely to allow the defendant 'to make effective

use of the evidence in preparing and presenting his case.'" Baldwin, 385 Mass. at 175, quoting Commonwealth v. Wilson, 381 Mass. 90, 114 (1980). See United States v. Drougas, 748 F.2d 8, 23 (1st Cir. 1984) ("Where . . . the defense is confronted not with complete suppression, but with delayed disclosure, reversal will be granted only if defendants were denied the opportunity to use the disclosed material effectively"). It is only where the delay in disclosure of Brady material deprives the defendant of the opportunity to make effective use of it that the Constitution is violated. See Commonwealth v. Adrey, 376 Mass. 747, 755 (1978), citing United States v. Pollack, 534 F.2d 964, 973 (D.C. Cir.), cert. denied, 429 U.S. 924 (1976).

The late disclosure here was not sufficiently timely to allow the defendant to make effective use of the material in preparing his defense.

Before trial, defense counsel investigated the surveillance location provided by the Commonwealth and even prepared photographs from the vantage point identified in discovery to use in cross-examination, only to find in the midst of the second day of trial that the location he investigated was not relevant to Detective Withrow's actual vantage point. Because the disclosure occurred literally in the middle of trial, defense counsel could not have demonstrated at trial that the delay in disclosure prevented him from making effective use of

the evidence.  But uncontested photographs taken from Detective Withrow's actual vantage point by an investigator after trial and presented to the judge at the first opportunity, in the defendant's motion for a new trial, showed that this vantage point had an obstructed view of the corner where the exchange was supposed to have taken place, in addition to being over one hundred feet away.  Evidence that Detective Withrow's view of the defendant was obstructed would have been critical to the defense.  Detective Withrow, alone among the Commonwealth's witnesses, claimed to have witnessed the defendant conduct a hand-to-hand exchange with the CI, and the evidence of this exchange was the sole basis for the defendant's conviction.  The late disclosure thus obviously deprived the defendant of the opportunity effectively to prepare his defense.[4]

Likewise, midtrial, the defendant was given mere hours' notice of the Commonwealth's intent to offer an entirely new police witness, Sergeant Avery, whose location in the surveillance operation had not been disclosed before trial, despite a specific request for each officer's surveillance location.  The photographs included in the defendant's new trial

---

[4] The Commonwealth does not contest the content of the photographs, arguing only that as a matter of law, the defendant was able adequately to cross-examine the witnesses without them, an argument with which we disagree.  As a consequence, a remand for an evidentiary hearing is not required.

motion also demonstrated that Sergeant Avery's view of the CI as he walked down Vine Street would have been limited. Had the defendant known Sergeant Avery would testify and had the defendant been able to use the photographs to cross-examine Sergeant Avery on his inability constantly to view the CI due to his surveillance location, the defendant could have presented a defense seriously undermining the officers' testimony that they maintained constant visual surveillance of the CI at all times and that the CI actually purchased heroin from the defendant. See Commonwealth v. Hernandez, 421 Mass. 272, 275 (1995) ("disclosure of the surveillance location would have been relevant and helpful to the defense where there was every indication that the testimony of the observing police officers was crucial to the Commonwealth's case"). Because of the delayed disclosure, the defendant could not make effective use in his defense of this information.

Defense counsel's pretrial work to establish the weakness of the Commonwealth's claim of constant observation of the CI was impressively diligent, yet it was rendered useless by the revelation at trial of the information that should have been provided in discovery. Likewise, posttrial counsel's work in establishing the inadequacy of the officers' vantage points was also diligent -- indeed, exemplary. The defendant has met his burden of demonstrating that the delayed disclosure of Detective

Withrow's and Sergeant Avery's surveillance locations were not "sufficiently timely to allow the defendant 'to make effective use of the evidence in preparing and presenting his case.'" Baldwin, 385 Mass. at 175, quoting Adrey, 376 Mass. at 755. That the defendant ultimately managed some cross-examination of Detective Withrow and Sergeant Avery as to their vantage points does not erase the prejudice to the defendant. "In order properly to cross-examine the police officers on their observations from the surveillance location, the defendant would need to know the distance from the observation post to the site of the alleged crime, as well as the existence of any obstructions or other impediments to a clear view." Hernandez, 421 Mass. at 275. Here, the defendant learned this information too late to make full use of it.

Both individually and cumulatively, these failures of disclosure by the Commonwealth prejudiced the defendant under the applicable standard. He therefore did not receive a fair trial and the denial of his motion for a new one was an abuse of discretion.[5]

---

[5] The defendant also argues that the Commonwealth's failure to provide all of the information about the CI's misconduct requires a new trial because it prevented the defendant from preparing what would have been valuable cross-examination of the police witnesses about the quality of the surveillance provided by the task force. The jury remained unaware of the full extent of the CI's misconduct, including his convictions for lying to

2.  Restriction of the defendant's cross-examination

rights.  The judge's exclusion of all evidence of the CI's

misconduct during the Commonwealth's case-in-chief and the

restrictions he placed on the defendant's cross-examination of

the Commonwealth's witnesses were also in error.  Although the

defendant was eventually permitted to conduct a limited

examination of Detective Withrow during the defendant's own

case-in-chief, he was restricted to asking about why the CI was

terminated, whether the CI was compensated, and whether the CI

was on probation; he could not inquire about the CI's

recruitment or prior work with the task force.

The defendant's right of confrontation under the Sixth

Amendment to the United States Constitution and his rights under

art. 12 of the Massachusetts Declaration of Rights entitled him

to "[a] fair and full cross-examination to develop facts in

issue or relevant to the issue[; it] is a matter of absolute

right and is not a mere privilege to be exercised at the sound

discretion of the presiding judge, and the denial of the right

is prejudicial error."  Commonwealth v. Johnson, 365 Mass. 534,

543 (1974), quoting Gossman v. Rosenberg, 237 Mass. 122, 124

---

and stealing from the FBI, and the defendant argues that this
was particularly significant where his conviction was based
entirely on evidence of a single controlled purchase.  In light
of our conclusion with respect to the surveillance locations and
the surprise witness, we need not reach the issue.

(1921).  The defendant should have been allowed a thorough cross-examination of each prosecution witness, for which recalling a single one of the witnesses in his own case-in-chief was not an adequate substitute.[6]

    Conclusion.  For these reasons, the judgment is reversed and the verdict is set aside, and the order denying the defendant's motion for a new trial is reversed.

So ordered.

---

[6] Because we conclude that the defendant is entitled to a new trial on these grounds, we need not address his other claims raised on appeal regarding the admission of hearsay evidence at trial, the inability to reconstruct the inaudible portions of the trial transcript, the prosecutor's statements in opening argument, and the denial of the defendant's motion for postconviction discovery that may have supported his argument that the Commonwealth withheld exculpatory evidence.